OUTTERSON *v.* FONDA LAKE PAPER CO.

*(Supreme Court, General Term, Fourth Department.* November, 1892.)

1. ESTOPPEL—CLAIM AGAINST CORPORATION.
　　Where plaintiff transferred his stock in defendant company to one S., under an agreement between them that plaintiff was to be indemnified against all debts of the company, a list of which was to be furnished on or before the date of the transfer, but defendant was not a party to the agreement, and the list furnished by plaintiff omitted a debt owed by defendant company to him, he is not estopped from recovering such debt from the company.

2. CORPORATIONS—EMPLOYMENT OF OFFICERS.

Where the trustees of a corporation at a regular meeting elect a treasurer of such corporation, and make a verbal agreement to allow him a certain amount as salary, such agreement will bind the corporation though there is no written resolution thereof entered in the minutes.

3. SAME—SPECIAL SERVICES OF OFFICERS.

The fact that a person is an officer of a corporation will not prevent his recovery of compensation for services performed outside of his official duties; and, if the circumstances are such as to authorize the inference that he was employed by the corporation to perform such duties, he is entitled to recover therefor.

4. APPEAL—WEIGHT OF EVIDENCE.

A court will not, on appeal, disturb the finding of a referee, if there is some evidence to support the finding.

Appeal from judgment on report of referee.

Action by James T. Outterson against the Fonda Lake Paper Company to recover money due him for services to defendant. From a judgment for plaintiff, defendant appeals. Affirmed.

In the complaint there are three counts. In the first it is alleged that the defendant is indebted to plaintiff in the sum of $346.09 for a balance due to the plaintiff from the Fonda Lake Pulp & Paper Company, which the defendant assumed and agreed to pay. In the second it is alleged that plaintiff, on or about December 15, 1888, was duly elected treasurer and manager of defendant, and from that time performed the duties of such positions until October 1, 1889, when he resigned, and was duly elected president, and that he performed the duties of president and financial manager to October 1, 1890; that defendant agreed to pay him for his services as treasurer and manager at the rate of $1,000 a year, and that his salary as president should be at the rate of $200 a month, and that his services were worth such sums; that during that time plaintiff made divers advances to the defendant in money or property, and received divers sums, and the balance on such account, including said services, was $1,685.30. In the third count it is alleged generally that prior to October 1, 1890, there were divers dealings between plaintiff and defendant, and that on or about October 1, 1890, there was an accounting between them, and a balance found due plaintiff of $2,031.39. Judgment was demanded for that amount. The referee allowed the plaintiff the item of $346.09; also the sum of $791.63 for salary and services as treasurer from December 15, 1888, to October 1, 1889; the sum of $2,146.66 for salary and services while president from November 9, 1889, to October 1, 1890; and the sum of $1,626.62 for divers moneys and expenses paid and advanced; and charged the plaintiff with moneys received to the amount of $3,133.37. That left a balance due plaintiff of $1,777.63, for which judgment was ordered.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

Henry Purcell, for appellant. F. B. Pitcher and Watson M. Rogers, for respondent.

MERWIN, J. The contest here is over the allowance to the plaintiff of the debt originally against the partnership, and of the items for services of plaintiff while he was treasurer and president of the defendant. It appears that in 1887 the plaintiff and three others formed a copartnership under the name of the Fonda Lake Pulp & Paper Company, for the manufacture and sale of wood pulp. This continued until December 12, 1888, when the defendant was duly incorporated; the incorporators and trustees being the same persons who composed the partnership. The capital stock was $55,000, of which $30,000 was issued to the incorporators for the real estate and plant of the partnership. Josiah E. Stone was elected president, and the plaintiff was elected treasurer, and by-laws were adopted, which provided, among other things, that the treasurer, subject to the control of the trustees, should have charge of the funds of the company, hire and discharge such agents and servants as

the business of the company should require, and have the general management of the business and affairs of the company. At the meeting at which plaintiff was elected treasurer it was agreed by the trustees that the plaintiff should receive a salary of $1,000 a year for his services, but no resolution to that effect was passed or entered in the book of minutes. Thereafter the plaintiff performed the duties of treasurer and manager from December 15, 1888, to October 1, 1889. At the latter date Charles Lennig purchased and paid for $4,000 of the stock of defendant, and Emil Schalk subscribed for $12,000 of the stock, which was issued to him, but not fully paid for. Lennig also made a loan to defendants of $24,000 upon a mortgage on its real estate and plant. Thereupon, at a meeting of the stockholders and trustees on October 3, 1889, Schalk, who was the agent of Lennig, was elected a trustee, and plaintiff resigned as treasurer, and Schalk was elected in his place. At a similar meeting on November 9, 1889, Stone resigned as president, and the plaintiff was elected in his place, and served as such from that date to October 1, 1890. During this time the plaintiff supervised the manufacture of pulp, the construction of a paper mill, and the manufacture of paper therein after the same was constructed, and had the general management of defendant's business at the pulp and paper mill. These services, the referee finds, were outside of his official duties as president, and were of the value of $200 a month. The referee also finds that these services were not intended to be gratuitous, and were rendered and performed with the knowledge and consent of the defendant. This finding is not excepted to. On the 3d September, 1890, the plaintiff, representing 300 shares of the stock of the defendant, and being all that were issued, except those held by Lennig and Schalk, made an agreement with Lennig, by which, for a certain price, he agreed to transfer to Lennig, on or before October 10th, all the stock he represented. In this agreement was the following clause: "At the time of the transfer of said stock, said Fonda Lake Paper Company, or its successors, shall indemnify said stockholders, whose stock is hereby contracted to be sold, against the debts of said company, a list of which is to be made up on or before the 10th day of September, 1890." The list of debts that was furnished by plaintiff under this provision of the agreement did not contain the debt or debts he now sues for, and the defendant therefore claims that the plaintiff is now estopped from asserting the existence of such indebtedness. This defendant did not execute that agreement, and was not a party to it. Besides, it is clear from the evidence that Schalk, the agent of Lennig and the treasurer of defendant, knew then of the plaintiff's claim for services, and knew that there was an unsettled account between the plaintiff and the defendant, and the books showed that a part of that account was the item of $346.09, which on the 21st December, 1889, had been entered in the account of plaintiff with the defendant, and in the account of the partnership with the defendant, upon the books of the defendant. If the plaintiff, in his dealings with Lennig, misrepresented as to the extent of the debts, or said nothing about his own claims, it would not be the basis for an estoppel here, although it might be evidence on the subject of the existence in fact of the claim. We think that an estoppel is not shown.

Coming, then, to the claim of the plaintiff on the partnership debt, there is no doubt, upon the evidence, that the partnership owed the plaintiff that amount, and the plaintiff had authority from the partnership, so far as it was concerned, to enter it in the account kept between the defendant and the partnership, and provide for its payment out of any funds that the defendant had belonging to the partnership. Upon the formation of the defendant, stock supplies of the partnership to the amount of $1,605.39 were transferred by the partnership to the defendant, and credit given to the partnership therefor upon an account then opened with the partnership on the books of defendant. Thereafter the defendant, from time to time, collected accounts belong-

ing to the partnership, and gave it credit therefor on the account, and also paid debts of the partnership, and charged them in the account. This course of proceeding continued until December 21, 1889, when the item of $346.09 was credited to the defendant in the partnership account, and charged to defendant and credited to plaintiff in his individual account. No further entries seem to have been made in the partnership account, and, as it then stood, there was a balance due the defendant thereon of $513.99. This remained until the time of the sale and transfer to Lennig by plaintiff of the stock owned or represented by him in the defendant. It was then paid by plaintiff to defendant, it being received by the treasurer, Schalk, in the deduction of so much from the purchase price of the stock transferred. No question then seems to have been made as to the correctness of the account on the books between the partnership and the defendant. Nor is any question now made as to the correctness of the charges made in that account to the defendant. It must therefore be assumed that the defendant has received funds of the partnership sufficient for the payment of all the items for which it has received credit, and that in the settlement of that account it has received credit, among others, for the item in controversy. It therefore cannot complain that plaintiff has been credited with this item in his account with the corporation. That is the only way it has paid it to the partnership. It is in fact part of the account that seems to have been running between plaintiff and defendant up to the time he left its employment. It is not important whether the officers now representing the defendant knew of this particular entry. It had the money, and the item has not been paid, except as it was entered as a credit to plaintiff in his account. I see no defense to this claim of plaintiff.

The question whether the plaintiff should be allowed his claim for salary as treasurer of defendant depends on whether a verbal agreement by the trustees, at the meeting at which plaintiff was elected treasurer, that he should have a salary at the rate claimed, should, in the absence of a written resolution entered on the minutes, bind the corporation. It has been held that in such a case the corporation would be bound. *Sheridan Electric Light Co.* v. *Chatham Nat. Bank,* (Sup.) 5 N. Y. Supp. 529; *Melledge* v. *Iron Co.,* 5 Cush. 179; Ang. & A. Corp. § 284. It should be so held here.

The main question in this case is over the services of plaintiff while he was president. Without that, there is a balance against him, although no counterclaim is set up. The referee has found, upon sufficient evidence, that the services which plaintiff performed during this time were outside his official duties as president; in fact, under the by-laws, the duties of the president as such were merely nominal. It is also found that the services were not intended to be gratuitous, and were rendered with the knowledge and consent of defendant. What he did was necessary to be done in the extended business of the corporation. There is evidence tending to show that he was employed by Mr. Schalk, the treasurer, who had authority to employ such agents and servants as the business of the corporation should require. If the services were outside of his official duties, and he was actually employed by the corporation, or the circumstances were such as to authorize the inference of an actual employment by the corporation, the fact that plaintiff was an officer would not prevent his recovery of compensation. *Jackson* v. *Railroad Co.,* 2 Thomp. & C. 653, affirmed 58 N. Y. 623; *Talcott* v. *Manufacturing Co.,* 11 Wkly. Dig. 141; *Barril* v. *Water-Proofing Co.,* (Sup.) 2 N. Y. Supp. 758.

The conclusion is, I think, warranted in this case that the plaintiff was entitled to compensation. There was, however, no agreement as to the amount that was binding upon the corporation. It seems to have been so understood by plaintiff. Evidence was given upon both sides as to the value of the services. The referee found them to be worth at the rate of $200 a month. There was evidence tending to show the value to be at that figure,

and, while I think the amount as allowed was large, I am not prepared to say that we have any right to interfere.

Our attention is called to a number of exceptions. We have examined them, but find nothing that would justify a reversal.

Judgment affirmed, with costs. All concur.