WILLIAM H. STARBUCK, Respondent, *v.* THE HOUSATONIC RAILROAD COMPANY, Appellant.

*President of a corporation — presumption as to his compensation, where he is also a stockholder or director thereof — questions properly submitted to the jury in an action therefor.*

A stockholder or director of a corporation cannot sustain his claim for salary as president thereof unless such claim is founded on a contract entitling him to compensation, and the inference of the existence of a contract from services performed by request which arises between individuals does not exist between the president and his corporation when he is a stockholder or a director thereof; on the contrary, the legal inference is that his services as president are to be rendered without compensation.

On the trial of an action brought by the former president of a corporation to recover of it the amount of salary alleged to be due him, it is proper to submit to the jury for its determination the question whether it was the purpose of a certain resolution of the corporation to fix the salary of its president at a certain sum and whether the plaintiff understood that such resolution was so general as to fix the salary of any person who should happen to be president of such corporation at such sum, and, if so, whether he, in full belief that he would be entitled to the rate of compensation in such resolution specified, entered upon and performed the duties of president; and an affirmative answer to such questions will entitle the plaintiff to judgment.

APPEAL by the defendant, The Housatonic Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 15th day of June, 1894, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 18th day of June, 1894, denying the defendant's motion for a new trial made upon the minutes.

*Wheeler H. Peckham* and *Hoffman Miller*, for the appellant.

*David McClure*, for the respondent.

O'BRIEN, J.:

The action was brought on a check given by the defendant to the plaintiff in part payment of his salary as president of the defendant railroad. The answer denies that defendant made or delivered such check, and alleges that at the time the check was drawn plaintiff was president of defendant and was about to resign; that he caused such check to be drawn without any authority of defendant's board, and that at the time defendant was not indebted to plaintiff. The answer contains a counterclaim for $8,716.67, representing cash of defendant obtained by plaintiff, which, with the check, made up the total amount claimed by him for salary as president.

On the trial it was shown that the check in question was drawn by the plaintiff's direction to pay him an amount, which he claimed defendant had agreed to pay, for salary as president of defendant from December, 1887, to June 15, 1892. Defendant claimed that it had not agreed to pay plaintiff any salary, and the question at issue was whether defendant had so agreed.

The plaintiff, being both a stockholder and a director in the company, could not sustain his claim as president unless he brought himself within the well-settled rule of law that such claim must be founded on a contract entitling him to compensation. (*Mather* v. *E. M. Co.*, 118 N. Y. 632; *Smith* v. *L. I. R. R. Co.*, 102 id. 193.) In the former case it is said: " It is well settled that a director of a corporation is not entitled to compensation for services performed by him as such without the aid of a pre-existing provision expressly giving the right to it." And in the latter case, wherein it appeared that the person suing had been appointed secretary of a railroad corporation in which he was not a director or stockholder, it was held that to entitle him to a reasonable compensation for his services it was not essential that a rate of compensation should be agreed upon, or that there should be an express agreement to pay a compensation; and in the course of the opinion the distinction between a person standing in this position and one who, being a stockholder and director, performed services, is pointed out, it being therein said: " The rule that directors or trustees cannot recover for services rendered for the corporation upon an implied promise is an application of the general rule applicable to trustees." And in *Kelsey* v. *Sargent* (40 Hun, 156) we find a quotation from Pierce on Rail-

roads, which says : " The directors are presumed to perform the duties of their trust gratuitously ; they are not entitled to compensation even for services outside of the ordinary duties of their offices, unless it is expressly stipulated before the services are rendered ; but an express contract by the board to pay a fixed or reasonable sum is binding. Some authorities require a vote or resolution as evidence of the agreement, while others do not require such formal action as essential where there is an actual employment. A subsequent vote of the board to pay a director for his services where there was no previous agreement is not binding. The expectation of a director that he was to receive compensation, there being no previous vote or promise, does not entitle him to it. The rule which excludes compensation applies to the president chosen by the directors from their own number, and also to a treasurer when a director, but not to officers and agents not being directors, who are entitled to recover on a *quantum meruit* where no price is fixed." (See, also, *Barril* v. *Calendar W. P. Co.*, 50 Hun, 258 ; *Gill* v. *N. Y. Cab Co.*, 48 id. 524.)

These authorities sustain appellant's position, that a president of a corporation, if a stockholder or director, can make good his claim for salary only by showing a contract therefor. Inferences of a contract from services performed by request which obtained between individuals are not allowed between a president and his corporation. On the contrary, the legal inference from these facts is, that services as president are to be rendered without compensation.

At the close of the case the defendant moved for a dismissal of the complaint or a direction of a verdict in its favor, on the ground that there was no evidence that the plaintiff had any contract or agreement with the defendant for the payment of a salary. If upon an examination of the evidence this claim is supported, that there was no proof of an agreement sufficient to present it as a question for the jury, then either of defendant's motions should have been granted.

The testimony shows that prior to 1869 it had been the rule of the company to pass a resolution annually with regard to salary, either naming the president who was to receive the same, or expressly limiting the effect of the resolution to the year ensuing its passage ; but in 1869, subsequent to an election, a resolution was

entered upon the books of the defendant, as follows: "Resolved, that the salary of the president be fixed at the sum of $3,000 per annum." In 1870 the amount having been increased, a new resolution was necessary, which is recorded on the minute book as follows: "Voted, that the salary of the president shall be $5,000 per annum." Plaintiff's immediate predecessor in the office of president of defendant was a Mr. W. H. Barnum, who was elected in February, 1872, and remained in office for fifteen years. Some months after the election of Mr. Barnum, and in the month of September, 1872, the board of directors passed a resolution in the following terms: "Voted, to the president a salary of $5,000 a year." And it was shown that, without any other action of the board, for nearly fifteen years thereafter, Mr. Barnum received a salary as president of the road in accordance with that resolution.

It will be noticed that this resolution is general in terms; that it does not mention the name of Mr. Barnum, nor is it limited to the particular year, having been passed some months after Mr. Barnum was elected; but it votes a salary to the president, and the inference, therefore, is that during the period that Mr. Barnum was president both he and the defendant regarded the action thus taken in 1872 as a standing or continuing resolution, because under it and pursuant to its terms Mr. Barnum received the salary. It is not claimed that upon plaintiff's accession to office this resolution was in any manner modified or rescinded, and it was, therefore, competent evidence upon the question of defendant's attitude relative to the matter of salary. Standing alone, however, it would not make an agreement; and while assuming it to be some evidence expressive of the intention of the company to pay its president a salary of $5,000, we must go one step further and determine the plaintiff's position in respect thereto.

It is not claimed that the plaintiff in any way waived his right to compensation, his testimony being, to use his own language: "I knew the salary was $5,000 a year. * * * I did not know of any action of the board of directors after I was elected president upon the subject of salary; I never supposed it to be requisite. * * * I have examined the book of minutes of the defendant company many times. The first time I examined the book was shortly after I was elected president. I looked to see

what the book of minutes said as to the salary of the president. * * * At the time I was elected there was no resolution passed upon the subject; I did not think it was necessary. * * * When I became president I was aware of the existence of a resolution in the minutes of the board fixing the salary at $5,000. When I became president I may not have known of it — of the existence of that resolution that day — but I knew that the president had received $5,000 for nearly a year, for I had seen his check. I knew that the president had received that salary always, or for a great many years, and that president was William H. Barnum."

This testimony tended to prove that the plaintiff entered upon the discharge of his duties with knowlege of the resolution and with the expectation that he was to receive the salary; and considering it in connection with the peculiar phraseology of the resolution and the conduct of the parties, including a discharge of the duties of the office of president, it presented for the jury these questions:

1. Was it the purpose of the resolution to fix the salary of the president, whoever he might be, at $5,000 a year?

2. Did the plaintiff understand that the resolution was so general as to fix the salary of any person who should happen to be president at $5,000? If so, did he with such understanding, and in full belief that he would be entitled to that rate of compensation, enter upon and perform the duties of president?

An affirmative answer to both questions would of course entitle the plaintiff to judgment. It was not, therefore, error for the court to submit the case to the jury.

The only exception taken to the manner of submission was to this portion of the charge: " The language of the resolution, therefore, is broad enough to cover the fixing of the salary of the president of this corporation at $5,000 a year." It is insisted that by so charging, the court conveyed to the jury the impression that under such resolution the plaintiff was entitled to a salary if the evidence showed that he, and he alone, thought that such salary was due to him thereunder, thus ignoring the company's understanding in passing such resolution.

If the charge were otherwise silent upon this question we should regard the criticism as meritorious. But as it abounds in statements to the effect that the plaintiff could not recover under the resolution alone, it must be said that the portion of the charge excepted to

was properly qualified. It was, indeed, but a step taken in the ordinary presentation of the issue. The jury had to be advised that if the corporation intended to fix the salary of the president, whoever he might be, at $5,000, the resolution was broad enough to accomplish that purpose; and, considered in connection with the rest of the charge, the language excepted to meant that and nothing more.

The appellant insists that it was error to receive the check sued upon in evidence, the claim being that when the objection was made the evidence showed that it was not legally issued and that its delivery was the culmination of a conspiracy between plaintiff and the vice-president to take this money from the treasury of the company; and further, that a by-law of the company provided that "the treasurer shall have charge of the finances of the company, subject to the direction of the board of directors;" and further, that the voucher for the check did not conform to the requirements of the by-laws.

The by-law relating to the duties of the treasurer has regard to the custody of the funds and, as clearly appears, has no relation to the manner in which checks shall be issued by the corporation. The criticism upon the voucher we assume to be that it is not signed by the officer whose duty it was to examine it and ascertain whether it was correct, and that it was not approved for payment by the vice-president. It must be remembered, however, that it was presented by the president of the company to the vice-president and general manager, whose duty it was to approve of the payment, and it was examined and registered by the auditor. But apart from this, if the check was issued by the proper officers for a valid indebtedness, we do not think that upon the question of liability the voucher would have any important bearing. The check was signed and countersigned by the proper officers, and the authority for issuing it was, not only the examination made by the auditor, but the request of the vice-president, who, together with the president, had authority to issue checks of the defendant company.

The final objection, that its delivery was the culmination of a conspiracy between the plaintiff and the vice-president to take the money from the treasury, necessarily relates to the merits of the controversy. If it were an indebtedness of the company to the plain-

tiff, for which he was entitled to receive the check, then this criticism would be untenable. If, on the other hand, the plaintiff had no right to the money represented by the check, or to the other moneys taken from the treasury, then the criticism would be justified. The way in which the payment was sought to be enforced, just at the time when the plaintiff was about to resign and was turning over the company to new directors, the payment to Stephenson of the cash obtained upon the check, and the failure immediately to apprise the directors of the action taken in the assertion of his claim to salary, justly subjected the plaintiff's acts to criticism and suspicion. They were, however, fully gone over in the testimony and in the charge, and were proper considerations for the jury; but upon this appeal we have refrained from dilating at any length upon them, for the reason that we think the merits of the appeal must depend upon the solution of the crucial question which was presented upon defendant's motion to dismiss the complaint or direct a verdict in its favor for want of evidence. This we have examined with care and in the light of the able argument made to support appellant's contention, and have concluded that it is not well founded.

If the evidence was sufficient to sustain the verdict in favor of the existence of a contract, thus upholding the plaintiff's rights to the moneys which he took, together with the amount represented by the check, the manner in which he secured the money, or the use that he made of it, have no direct bearing upon his right thereto; and for this reason we do not feel that it is necessary to comment on testimony which has no direct bearing upon the legal questions presented on this appeal.

The judgment and order, therefore, should be affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment and order affirmed, with costs.