STOUT v. SECURITY TRUST & LIFE INS. CO.

(Supreme Court, Appellate Division, First Department. April 17, 1903.)

1. CORPORATIONS—OFFICERS AND DIRECTORS—EXTRA SERVICES—IMPLIED PROMISE OF COMPENSATION—EVIDENCE—SUFFICIENCY.

Plaintiff, the first vice-president of an insurance corporation, and also one of its directors, performed services for it between February 28, 1899, and February 11, 1901, which he claimed were outside of his regular duties. There was no express agreement to pay for them. It appeared that he was one of the corporation's largest stockholders; that it was not in a flourishing condition, and there was fear the Insurance Department might prevent it from doing business in the state; and that plaintiff and other directors made extra efforts to raise money and put it on a sound basis. The minutes of the stockholders' meeting for January, 1900, which were prepared by plaintiff, referred to him as having given his services to the company for the year past without compensation. These minutes were also read at the January, 1901, meeting, at which plaintiff was present. The annual report for the year ending December 31, 1899, verified by plaintiff, stated that there was no money due for unpaid salaries or claims, except those specified; plaintiff's claim not appearing. Three witnesses testified that plaintiff said he was serving the company without pay. Plaintiff denied this. *Held* to show no implied promise to pay for plaintiff's services.

2. SAME—EVIDENCE—ADMISSIBILITY—CROSS-EXAMINATION.

Plaintiff having testified as to what services he performed outside his duties as vice president, it was error to refuse to require him to answer on cross-examination, "What were your duties as vice president?"

3. SAME.

Plaintiff having testified that he had nothing to do with preparing the report of the corporation to the Superintendent of Insurance for New York, it was error to refuse to require him to answer on cross-examination as to who did prepare that report and the reports for the other states.

4. SAME.

Plaintiff having testified what services he performed relative to the Insurance Department, it was error to exclude the cross-examination intended to show that such subject was one generally before the officers of the company, and one in which they took part and rendered services.

Appeal from Judgment on Report of Referee.

Action by James N. Stout against the Security Trust & Life Insurance Company. From a judgment for plaintiff entered on the report of a referee, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-LIN, O'BRIEN, and INGRAHAM, JJ.

Jacob Halstead, for appellant.
L. Laflin Kellogg, for respondent.

O'BRIEN, J. The action was brought to recover $20,000 for services rendered by plaintiff to defendant, at its special instance and request, in the management of its business affairs between February 28, 1899, and February 11, 1901. The plaintiff was a director and first vice president of the defendant corporation. At a meeting of the directors on March 4, 1899, the following resolution was passed:

"On motion it was resolved that the first vice president be, and hereby is, appointed general manager of the real estate owned by this company, with full power and authority to make leases, collect rents, to hire, appoint, and discharge rental agents and other necessary employés, to make alterations, and generally to supervise and manage the said real estate and all details pertaining thereto, and to make reports to the company from time to time."

As to the character of the services rendered by him, the plaintiff testified that they were divided into two classes: First, such services as had to do with the real estate of the company under the resolution; and, second, services having to do with the other business of the company, and the management of its affairs, not mentioned in the resolution.

The contention upon the trial was whether the services were within the plaintiff's duties as an officer and director of the company, or were outside of and in addition to them. The insistence of the plaintiff was that they were outside of those duties, and such as entitled him to be paid therefor. It is not claimed that there was a resolution fixing any salary or compensation, or any expression upon the part of the board of directors indicating that they expected or were to pay him for the services. The defense was that the resolution was merely an addition to the by-laws, defining the duties of the first vice president; that the absence therefrom of any statement that compensation was to be given was indicative of the sense of the board that the services were to be performed gratuitously; and that this latter view prevailed with respect to some additional services rendered relative to business of the defendant outside of the duties specified in the resolution. The question presented, therefore, upon this appeal (assuming, in view of the finding of the referee, that, outside of the duties of an officer and director, the plaintiff performed certain services for the defendant), is whether, for any of his services while such director or officer, the plaintiff can recover salary or compensation, in the absence of an express agreement or contract to pay therefor on the part of the corporation. The cases of Mather v. Eureka Mower Co., 118 N. Y. 629, 23 N. E. 993; Smith v. L. I. R. Co., 102 N. Y. 191, 6 N. E. 397; Barril v. Water-Proofing Co., 50 Hun, 257, 2 N. Y. Supp. 758; Gill v. Cab Co., 48 Hun, 524, 1 N. Y. Supp. 202; and Starbuck v. Housatonic R. Co., 83 Hun, 534, 32 N. Y. Supp. 87—support the rule formulated in the first authority cited (Mather v. Eureka Mower Co., supra), that:

"It is well settled that a director of a corporation is not entitled to compensation for services performed by him as such, without the aid of a preexisting provision expressly giving the right to it."

The rule was thus referred to in Starbuck v. Housatonic R. Co., supra:

"In Kelsey v. Sargent, 40 Hun, 156, we find a quotation from Pierce on Railroads which says: 'The directors are presumed to perform the duties of their trusts gratuitously. They are not entitled to compensation even for services outside of the ordinary duties of their offices, unless it is expressly stipulated before the services are rendered, but an express contract by the board to pay a fixed or reasonable sum is binding.'"

In the case of Gill v. Cab Co., supra, the facts were not unlike those appearing in the case at bar. There the plaintiff was a director as. well as vice president of the corporation, and claimed compensation for services rendered outside of his duties as officer and director. In the opinion written by the Presiding Justice of this court, it was said:

"Although the services which are claimed to have been rendered by the plaintiff in this case may have been beyond that which ordinarily belonged to the office of director, and beyond the scope of the duties defined by the by-laws as belonging to the office of second vice president, yet, from the mere fact of the rendition of those services, no presumption of a promise to pay can arise."

If the law as settled in this state is to control, therefore, it is evident that, upon the facts shown by this record, the plaintiff cannot recover. It is insisted, however, that a different rule has been established by the Supreme Court of the United States, and we are referred to the two cases of Fitzgerald Construction Co. v. Fitzgerald, 137 U. S. 98, 11 Sup. Ct. 36, 34 L. Ed. 608, and Corinne Mill Canal & Stock Co. v. Toponce, 152 U. S. 405, 14 Sup. Ct. 632, 38 L. Ed. 493. In the latter case it was held that a general manager of a corporation, who is at the same time a director and vice president thereof, may recover of it for his services as general manager, which were clearly outside of his duties as vice president and director, where they were rendered under such circumstances as raise an implied promise to pay for them on the part of the corporation. And in the authority first cited (Fitzgerald Const. Co. v. Fitzgerald, supra), Chief Justice Fuller quotes with approval what was said in Pew v. First National Bank, 130 Mass. 391, as follows:

"A bank or other corporation may be bound by an implied contract in the same manner as an individual may. But in any case the mere fact that valuable services are rendered for the benefit of a party does not make him liable upon an implied promise to pay for them. It often happens that persons render services for others which all parties understand to be gratuitous. * * * In such cases, however valuable the services may be, the law does not raise an implied contract to pay by the party who receives the benefit of them. To render such party liable as a debtor under an implied promise, it must be shown not only that the services were valuable, but also that they were rendered under such circumstances as to raise the fair presumption that the parties intended and understood that they were to be paid for, or at least that the circumstances were such that a reasonable man in the same situation with the person who received and is benefited by them would and ought to understand that compensation was to be paid for them."

The learned referee has found, first, that the plaintiff performed all the services at the request of the defendant; and, second, that all for which compensation is sought were outside the duties of vice president. The record, however, is barren of any specific request on the part of the corporation, other than what is stated in the resolution; and we must assume therefore, if the plaintiff is to succeed, that both the services rendered under the resolution and the additional services were performed under such circumstances as legally implied a request by the defendant to the plaintiff to render them. And to sustain this recovery, we must go a step further, and assume that the circumstances were such as to create the additional implication that the defendant expected to pay and the plaintiff to receive therefor compensation. This latter, as a separate finding of fact, or as a conclusion of law from other facts found, is, in our opinion, against the weight of evidence.

We have already adverted to the fact that there was no express agreement to pay; and the weight of testimony preponderates in favor of the view that the defendant never expected to pay, nor did the plaintiff originally intend to charge, for the services. In addition to his official connection with the defendant, the plaintiff was one of the largest stockholders. The company was not in a flourishing condition, and had been subjected to some criticism by the Insurance Department of this state, and at times it looked to those interested in the company as though the Insurance Department might prevent it from doing business in this state, which would have been a serious blow to the company and its stockholders. It was important to retain the right to do business here; and in the effort to accomplish this end, and to get more business and additional money, so that the defendant might conduct its business profitably, most of the services claimed to have been rendered by the plaintiff outside of his duties as an officer were performed. Undoubtedly his services were directly beneficial to the defendant, but indirectly they were equally beneficial to him as a large stockholder; and in benefiting the company, therefore, he was benefiting himself. Not only was the plaintiff endeavoring to avert the threatened action of the Insurance Department, and instrumental in raising money by the sale of stock, and soliciting for the defendant business from other persons and companies, but other directors, also, were engaged in the effort to place the company upon a sound business and financial basis. And as significant of the view that the plaintiff took on the subject of whether or not he was to receive a salary or compensation, we have the statement contained in the minutes of the stockholders' meeting of January, 1900, which, it is shown, was prepared by the plaintiff, and taken by him to Philadelphia, and handed to the president of the company, by whom it was read at the meeting. And at the annual meeting at Philadelphia in January, 1901, at which the plaintiff was present, the minutes of the stockholders' meeting of the prior year, containing the statement referred to, were read; and such statement, we find, concludes as follows:

"A large block of the company's stock passed into the control of a syndicate represented by our fir and second vice presidents, who, in addition to

securing a contribution of $700,000 to the capital of the company, have given their services to it during the past year without compensation."

In the annual report, also, for the year ending December 31, 1899, which was verified by the plaintiff, it is said that there was no money due for unpaid salaries or claims against the company, other than those specified; and nowhere in that report does it appear that the plaintiff made a claim for salary or compensation for the services for which he now seeks to recover. In addition, we have the testimony of three witnesses who testified that the plaintiff stated to each of them that he was serving the company without compensation. It is true that the plaintiff denies having stated to these witnesses that he did not intend to charge the company for his services; but his unsupported denial cannot, upon any rule that may be applied for the weighing of evidence, be regarded as sufficient to counterbalance or meet the greater number of witnesses on the other side, corroborated as these latter are by the documents to which we have referred.

We think, therefore, that the weight of evidence is against the finding of the referee, and that the circumstances under which the services were rendered show that, though they may have been valuable to the defendant, they were not performed with any expectation on the part of the defendant that they were to be paid for; nor do we think that originally, when undertaken by the plaintiff, he expected to obtain therefor any compensation. Our conclusion is that the weight of evidence is against there being an implied promise to pay for the services.

As bearing upon this branch of the case, moreover, there were certain rulings made by the referee which are fatal to the judgment. It was of the utmost materiality to show the circumstances under which the services were rendered, and to have all the testimony which might throw light upon this disputed issue. The plaintiff was permitted to testify as to what services he had performed outside of his duties as vice president of the company; yet, when the defendant's counsel asked him on cross-examination, "What were your duties as vice president of the company?" the question was excluded. So, too, with respect to what officers of the defendant company prepared the annual report for filing in the various states, the cross-examination intended to elicit this information was excluded, although the plaintiff was permitted to testify that he had nothing to do with preparing the report to the Superintendent of Insurance of the State of New York; and the direct question as to who prepared that report was also excluded. Again, although the plaintiff was permitted to testify as to what services he performed relative to the Insurance Department, the cross-examination intended to bring out the fact that this subject was one which was generally before the officers of the company, and one in which they took part and rendered services, was excluded.

Not alone for errors committed in rulings, however, but upon the ground that the conclusion reached is against the weight of evidence, we think that this judgment, applying the rule laid down by the United States Supreme Court, must be reversed, and a new trial ordered.

It has been our settled policy not to create a liability, as against a corporation, in favor of an officer who renders services upon the theory of an implied contract; our view being that the services will be presumed to be rendered gratuitously unless there is an express contract upon which the right to compensation is based.   The plaintiff does not claim under an express contract or agreement, and it follows that his complaint upon the new trial must be dismissed.   We think, therefore, that the judgment appealed from should be reversed, and a new trial ordered before another referee, with costs to the appellant to abide the event.   All concur;  VAN BRUNT, P. J., in result.