# F. E. THOMPSON *v.* WHITNEY & MARSH, LIMITED.

### EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

#### ARGUED OCTOBER 6, 1905.        DECIDED OCTOBER 30, 1905.

#### FREAR, C.J., HARTWELL AND WILDER, JJ.

PLEADINGS, CONSTRUCTION OF—*corporation indorsing note for accommodation of maker—holder for value or without notice—inference from taking after maturity and dishonor a note so indorsed.*

In an action against the indorser by the holder of a note signed "Honolulu & Hawaiian Paper Co., Ltd., by Walter Gasset, Manager" and indorsed "Whitney & Marsh, Ltd., by H. T. Marsh, Secretary, H. T. Marsh, Fitzgerald Trunk Co., H. F. Fitzgerald," the complaint averred in substance that the note was made and delivered to pay for certain goods on the credit of the indorsement; that the defendant indorsed the note for the purpose of procuring for the maker a credit with the drawee; that the maker of the note in consideration of the indorsement agreed to deliver to the defendant the said goods purchased by the maker from the drawee, and that at the date the note was delivered to the drawee the maker was insolvent and unable to obtain goods on credit, of all of which the defendant had knowledge; that after the note had matured and been dishonored the drawee indorsed and delivered it still unpaid to the plaintiff. Held, it is to be inferred that the plaintiff, having been permitted to amend his original complaint in order to show that the indorsement was not made for accommodation, has stated the facts as favorably to himself as the case permitted; that he has pleaded facts sufficient to show that the indorsement was made for accommodation but failed to aver facts show-

ing that this was done in connection with the defendant's business or required by the exigencies of that business. Therefore the amended complaint shows an indorsement given for the accommodation of the maker of the note.

The plaintiff having taken the note after maturity and after it was dishonored is, in the absence of averment to the contrary, presumed to have taken it with notice that the indorsement was not in the usual course of business and was for the accommodation of the maker. The plaintiff therefore is in no better position than the drawee and the same defense which the defendant corporation could make to an action by the drawee can be made in this action. The facts that the indorsed note was given in payment of goods which the insolvent buyer could not obtain on its own credit and that the defendant indorsed the note for the purpose of procuring for the buyer credit with the seller, preclude an inference that the indorsement was made by the defendant in its ordinary course of business.

CORPORATION—*authority to issue accommodation paper—consideration for indorsement moving from maker of note—transaction outside of scope of corporate business—defense of illegality.*

An indorsement by a corporation may or may not be valid according to whether it appears that the collateral transaction involved in the maker's promise of benefit to the indorser is within the scope of the indorser's corporate powers. Consent of all the stockholders cannot add to powers of a corporation given or authorized by statute. A corporation cannot indorse for accommodation of another paper in which it is not interested. A corporation may set up the defense of illegality of its indorsement in an action on its ultra vires indorsement brought by one who is not a bona fide holder for value without notice.

OPINION OF THE COURT BY HARTWELL, J.

The action was brought upon the defendant's indorsement of two promissory notes of the Honolulu and Hawaiian Paper Co., Limited, payable in the sums of $500 and $1,000 respectively to the order of Fitzgerald Trunk Co. The defendant's demurrer that the complaint does not show a cause of action, is based on its claim that the complaint shows it indorsed the notes for the accommodation of the maker which, it is contended by the

defendant, was beyond its corporate powers.   The demurrer, having been overruled, the case comes upon the defendant's interlocutory bill of exceptions.

The complaint avers that on July 19, 1902, "the Honolulu and Hawaiian Paper Company, Limited, a corporation, then and at all times hereinafter mentioned, organized and existing under and by virtue of the laws of the Territory of Hawaii, made, executed and delivered to the Fitzgerald Trunk Company, its certain promissory note in writing in words and figures as follows, to-wit:

$500.                          Honolulu, H. I., July 19, 1902.

Three months after date we promise to pay to the order of Fitzgerald Trunk Co., Five Hundred Dollars at the National Bank of North America, Chicago.   Value received with interest at 6% per annum after due, until paid.

Sig.   HONOLULU & HAWAIIAN PAPER CO., LTD.
By WALTER GASSETT, Manager.

(Indorsed)

Whitney & Marsh, Ltd.

By H. T. Marsh, Secretary.

H. T. Marsh

Fitzgerald Trunk Co.

H. F. Fitzgerald.

"That at said time and before said note was delivered as aforesaid, the defendant, Whitney & Marsh, Limited, indorsed said note.

"That said note was made and delivered as aforesaid for the purpose of paying for certain goods, wares and merchandise on the credit of such indorsement; that defendant, Whitney & Marsh, Limited, indorsed the same for the purpose of procuring for the said Honolulu and Hawaiian Paper Company, Limited, a credit with said Fitzgerald Trunk Company; that said Honolulu and Hawaiian Paper Company, Limited, in consideration of such indorsement so made as aforesaid undertook and agreed to deliver and did deliver to said Whitney & Marsh, Limited, those certain goods, wares and merchandise aforesaid purchased by said Honolulu and Hawaiian Paper Company, Limited, from

said Fitzgerald Trunk Company of the value of $500.00, and that at the date said note was delivered by said Honolulu & Hawaiian Paper Company, Limited, to said Fitzgerald Trunk Company said Honolulu & Hawaiian Paper Company, Limited, was insolvent and unable to obtain goods, wares and merchandise on credit, of all of which said Whitney & Marsh, Limited, had knowledge.

"That said note was duly presented for payment at the time and at the place of payment therein named, and was dishonored, and was thereupon duly protested for non-payment, of all of which due notice was given to the defendant; that the costs of said protest were Two and 58-100 Dollars.

"That thereafter said Fitzgerald Trunk Company by H. J. Fitzgerald, indorsed and delivered said note, still being unpaid to plaintiff herein and said plaintiff is now the owner and holder thereof.

"That although frequent demand for the payment of said note and interest thereon has been made by plaintiff of defendant said defendant has neglected and refused and still neglects and refuses to pay the same or any part thereof, and the same is due and wholly unpaid."

The complaint contains a second count on the indorsement of the $1,000.00 note, with like averments.

The complaint also avers "That defendant is now and at all times hereinafter mentioned has been a corporation organized and existing under and by virtue of the laws of the Territory of Hawaii, and having its place of business at Honolulu, aforesaid."

The case is now presented upon an amended complaint, a demurrer to the original complaint having been sustained by the circuit court without leave to amend and this court on exceptions having remanded the case with leave for the plaintiff to amend in order that he might, if the facts permitted, show that this was not a case of an accommodation indorsement.

The following are the amendment, viz: The original complaint averred that the note was "made and *indorsed*," the amended complaint avers that it was "made and *delivered* for the purpose of paying for certain goods," etc. The amended

complaint, after the averment that the defendant indorsed the note for the purpose of procuring for its maker a credit with the drawee, omits the words in the original complaint, "knowing that it would be so applied, and knowing that the said note was so passed and so indorsed by said defendant with the privity of said Honolulu and Hawaiian Paper Company, Limited, to the said Fitzgerald Trunk Company in payment as aforesaid." In place of the omitted averment the amended complaint adds the averment above recited that in consideration of the defendant's indorsement made as aforesaid the maker of the note agreed to deliver and did deliver to the defendant the goods purchased by the Paper Company which was then insolvent and unable to obtain goods on credit, of all of which the defendant had knowledge.

The case which was first presented showed, as we thought, that the indorsement of the defendant corporation was made for the accommodation of the maker of the note. Assuming but not deciding that the indorsement would be unauthorized by law, we allowed the plaintiff an opportunity by amending his complaint to show that the indorsement was required by the exigencies of the defendant's business, thereby bringing the case within the implied power of a corporation to issue negotiable paper, which is recognized by the statutory prohibition of the exercise of such power by a corporation "except so far as the exigencies of the particular business for which it was incorporated shall require" (Sec. 2560 R. L.) implying that negotiable paper may be issued in the excepted cases.

But the amended complaint does not show that the defendant's indorsement was made in, or required by the exigencies of its particular business.

The maker of the note, being unable, upon its own credit, to obtain the goods bought of the drawee unless the defendant would indorse its note, secured the indorsement by agreeing to deliver the goods, when obtained, to the defendant. The use of the goods, which the agreement permitted the defendant to make, is left for inference. The plaintiff claims that no infer-

ence can be made of the defendant's unlawful use or of its use of the goods other than its corporate business required or justified. This argument is based on the general presumption of right conduct, which applies to corporations as well as persons, and on the general rule that wrong conduct or unauthorized acts are not presumed but must be shown. This contention of the plaintiff would have to be sustained if he had contented himself with a common law declaration upon an indorsement; but he has not seen fit to declare as at common law, he has pleaded facts sufficient to show that the indorsement was made for accommodation, but has failed to aver facts showing that this was done in connection with the defendant's business or required by the exigencies of that business. "The reason why at common law a pleading is construed against the pleader is that it is a natural presumption that the party pleading will state his case as favorably as he can for himself." *U. S. v. Linn,* 42 U. S. 111.

Accommodation paper is frequently defined as that which is given without consideration. The plaintiff, apparently relying upon this definition, has stated a consideration for the indorsement and claims that he has thus brought a case which is not subject to the law of corporations concerning accommodation indorsements. But an indorsement for accommodation is not often made gratuitously; on the contrary it is usually in consideration of benefits expressly or impliedly promised rather than as a favor to the maker of the note.

If the indorser receive a consideration directly from the drawee, the indorsement is not given for accommodation; but if induced by the maker's promise of benefit to himself, apart from the consideration moving to him from the drawee, the indorsement, if made by a corporation, may or may not be regarded as given for accommodation, according as it may appear that the collateral transaction is within the scope of the indorser's corporate powers.

Thus in *Nat. Bk. v. Co.,* 116 N. Y. 293, S. T. & Co., makers of notes payable to their own order and indorsed by them in blank, obtained the indorsement of the defendant corporation

for a sum of money paid by them to its president, "being at the rate of one-fourth of one per cent. a month for every month of the time the notes run." The court held that the indorsement was ultra vires and void, saying "Counsel have not directed our attention to, nor have we found in any of the statutes referred to, a provision empowering the defendant to bind itself by making or indorsing promissory notes for the accommodation of the makers for a consideration paid."

In *Lyon, Potter & Co. v. First Nat. Bk.*, 85 Fed. 122, the plaintiff, in error, a corporation, had indorsed in blank a promissory note of $5,000.00 made by C. H. Martin Co., a corporation, payable to the order of C. H. Martin, which the defendant had discounted at the request of Martin. To an action upon this indorsement, the defense was made that it was for the accommodation of C. H. Martin and without consideration, and that it was beyond the powers of the corporation. The facts were in evidence that the Martin Co. was a corporation selling musical instruments with a capital stock of $10,000.00 of which Lyon held $5,000.00, Potter $500.00 and Martin $4,500.00,. Martin being its president and Potter its secretary and treasurer, as well as treasurer of Lyon, Potter & Co. Martin having informed Potter that $5,000.00 was required to pay the liabilities of the Martin Co., of which $1,500.00 was due upon a note of that company indorsed by Lyon, Potter & Co., and $2,000.00 was owing to Lyon, Potter & Co., on current account with the Martin Co., Martin, out of the proceeds of the note indorsed as aforesaid, paid the $1,500.00 note and the $2,000.00 owing on account.

The court held that the indorsement being partly for the benefit of the corporation, which made the indorsement, was not to be treated as made for accommodation. And so when a corporation buys goods by indorsing a note. *Bank v. Allen,* 90 Fed. 545.

It is not essential that the benefit which the indorsing corporation receives from indorsing a note shall come directly from the drawee. It is enough if the benefit is received indi-

rectly, provided always that the indorser's object in making. the indorsement is a legitimate object in connection with its regular corporate business. Of course the maker's object in securing the aid of an indorsement may be something in which the indorser is not legitimately concerned; but while the indorser's intent necessarily is to aid the maker of the note by lending him its credit, if it seeks to accomplish thereby legitimate objects of its own, and not simply to aid the maker, then the indorsement is not for accommodation.

The complaint shows, as we think, an indorsement given for the accommodation of the maker of the note. It is not averred or claimed in argument that the plaintiff took the note for value or without notice but merely that the drawee, after demand and refusal, indorsed and delivered it to the plaintiff, presumably for collection.

And even if the plaintiff had bought or cashed the note, "the fact that the maker of a promissory note procures it to be discounted for his own benefit is, if unexplained, notice to the discounter that the indorsement is not in the usual course of business, but it is for the accommodation of the maker." *Nat. Park Bk. v. Co., ubi supra.*

The plaintiff therefore is in no better position than the drawee and the same defense which the defendant corporation, as an indorser for accommodation could make to an action by the drawee can be made in this action by the plaintiff who took the note with notice that this was an accommodation indorsement, and knowing, as the complaint avers, that the indorsed note was given in payment of goods which the insolvent buyer, the maker of the note, could not obtain on its own credit, and that the defendant indorsed the note for the purpose of procuring for the buyer credit with the drawee, the seller of the goods. These facts preclude an inference that the plaintiff or the drawee might have regarded the indorsement as made by the defendant in its ordinary course of business.

It is familiar law that while a partner cannot bind his firm by an accommodation note or indorsement, the firm may   be

bound by actual or implied consent, or by subsequent ratification. The same rule applies to partnership notes given by a partner for his individual debt.

It is generally held, however, that a corporation cannot use its corporate funds for such purposes unless authorized to do so by statute conferring the power expressly or by necessary implication.

"It is well settled that a corporation has no implied power to issue or indorse bills or notes in which it has no interest for the mere accommodation of another, for such a transaction is ordinarily foreign to the objects for which corporations are created; and it can make no difference that the corporation will be incidentally benefited by such a transaction, or is paid a consideration, or that the transaction is consented to or ratified by all the stockholders." 1 Cl. & Marsh, Priv. Corp. Sec. 182. "There is a dictum by Judge Brown to the contrary in the late New York case, *Martin v. Niagara Falls Paper Mfg. Co.,* 122 N. Y., 165, but it is merely dictum, with no citation of authority to support it, and it is directly contrary to the settled rule in other jurisdictions, and to the rule clearly established by the actual decisions in New York." *Ib.* p. 144.

"A corporation has no power to make or indorse commercial paper for the accommodation of others unless the power is expressly conferred by its charter or governing statute." 7 Thomp. Corp. Sec. 8341.

A corporation cannot issue or indorse simple accommodation paper in which it has no interest. Such paper will be void in the hands of parties who have notice of its character." Green's Brice's Ultra Vires, 252 n. (a).

"A private manufacturing corporation has no power to accept drafts having no connection with its business, being merely loans by way of accommodation. It cannot acquire this power simply by exercising it repeatedly. The directors and stockholders cannot, either by permission or ratification, confer it upon any of its officers or agents. If the holder of such acceptance takes it with knowledge of its character he cannot enforce it. He has notice of its invalidity. The corporation may interpose that defense." *Webster & Co. v. Howe Machine Co.,* 54 Conn. 411.

"We know of no well considered case where a corporation,

which is party to a continuing contract which it had no power to make, seeks to retract and refuses to proceed further, can be compelled to do so." *Penn. Co. v. St. Louis, Alton, &c., Railroad,* 118 U. S. 317.

"The doctrine of ultra vires, by which a contract made by a corporation beyond the scope of its corporate powers, is unlawful and void, and will not support an action, rests, as this court has often recognized and affirmed, upon three distinct grounds: the obligation of any one contracting with a corporation, to take notice of the legal limits of its powers; the interest of the stockholders, not to be subject to risks which they have never undertaken; and, above all, the interest of the public, that the corporation shall not transcend the powers conferred upon it by law." *McCormick v. Market Bank,* 165 U. S. 549.

"Whatever divergence of opinion may arise on this question from conflicting adjudications in some of the state courts, in this court it is settled in favor of the right of the corporation to plead its want of power, that is to say, to assert the nullity of an act which is an ultra vires act." *California Bank v. Kennedy,* 167 U. S. 367.

"The rule in this court is that a contract made by a corporation beyond the scope of its powers, expressed or implied, cannot be enforced, or rendered enforcible, by the application of the principle of estoppel. The rule in Kansas seems to be that when the contract has been executed and the corporation has received the benefits of it, the corporation is estopped from questioning its validity, and so in respect of evidences of indebtedness purchased before maturity in good faith and without notice. But we are not persuaded that if the defence of ultra vires had been interposed in the action against this company, and the facts had been found to be as they have been found here, the defence would not have been sustained in the courts of Kansas." *Ward v. Joslin,* 186 U. S., 151.

"The constitution of a corporation, and consequently the corporate powers, are presumed to be known as matters of law to all persons interested in the corporate enterprise or dealing with the corporation. Every person who enters into a contract with a corporation is bound at his peril to take notice of the legal limits of its capacity. And all persons dealing with a corporation are bound to take notice of its charter, constitution, by-laws and manner of doing business." 1 Beach Priv. Corp. Sec. 383.

"A corporation cannot by its officers execute a note for a debt due from a third person to another, having no relation to its business. A manufacturing corporation, organized under the general laws of New York, has no power to indorse for the accommodation of another paper in which it is not interested. And the indorsement of such paper by the treasurer of a manufacturing corporation may be presumed to be ultra vires." 1 Reid Corp. Finance, Sec. 68.

Hawaiian corporations are not authorized by the statutes under which they are created to issue accommodation paper. The statute (R. L. Sec. 2560) that "except as otherwise provided no corporation shall be deemed to possess the power of discounting bills * * or issuing notes or other evidences of debt except so far as the exigencies of the particular business for which it was incorporated shall require," implies that it may issue negotiable paper if the exigencies require, but it cannot be deemed that they rquire the corporation to aid insolvent traders with its credit or money. The statute also implies that corporate notes shall be issued only to meet the exigencies of the corporate business and that if issued for other purposes they have no validity except with bona fide holder for value without notice that they were issued for an unauthorized purpose.

To issue accommodation paper is not necessary for carrying on any business for which corporations or joint-stock companies may be incorporated under the laws of Hawaii. The consent of all the stockholders cannot add to powers of a corporation which are given or authorized by the statute under which it has corporate existence. Issuing negotiable corporation paper for value received, being lawful, an innocent holder of such paper may rely upon the presumption that it was given in the regular course of corporate business, as against such person, a corporation could not escape liability by showing that the paper was not so given. But the presumption of legality cannot be made in favor of one who knows otherwise; as to him the corporation may set up illegality in defense of an action on its ultra vires notes or indorsements.

The objection to corporations issuing accommodation paper

is sometimes based on the absence of corporate power to give away corporate funds gratuitously. "The property and funds of a corporation belong to its shareholders, and cannot be devoted to any use which is not in accordance with their chartered purposes, except by unanimous consent. No agent of a corporation has implied authority to give away any portion of the corporate property, or to create a corporate obligation gratuitously. It follows, for the same reason, that authority can never be implied to lend the credit of a corporation without a consideration, or to sign its name to negotiable paper for the accommodation of others." 1 Morawetz Priv. Corp., Sec. 424. We think that the objection to corporation paper, made for the purpose of assisting others, must be based upon the non-existence of corporate power to engage in any transactions outside of its chartered purposes. Thus, "It is well settled that a corporation cannot engage in a business wholly distinct from its main enterprise, merely in order to raise funds for the purpose of carrying on the latter; nor is a transaction authorized merely because it is profitable to the corporation." *Ib.* Sec. 393.

"The fact that a transaction is profitable to a corporation is not alone sufficient to show that it is within its chartered powers. The ultimate object of every business corporation is the gain of money, but this object must be attained by the particular means indicated by the company's charter. To employ other means would be contrary to the agreement of the shareholders, and in excess of the authority granted by the State." *Ib.* Sec. 363.

It may be for the interest of a corporation to aid by its credit or its money those whose business is allied to or is of a like nature with its own, and the failure of which might affect injuriously its own business; and yet to make common cause with such other persons or corporations on the claim that the exigencies of its own particular business require it to do so, would perhaps be beyond its corporate power. Whatever may be the favorable result upon the corporation of giving voluntary aid under such circumstances, the granting or withholding of such aid would involve the exercise of large discretion, so

liable to abuse or favoritism that it cannot be classed with any corporate power granted by statute. If such power were expressly included in articles of association of incorporated joint stock companies, few persons would care to risk their money in purchase of its stock unless sure of the action of those who held the majority of the stock. It is for the protection of the minority stockholders, as well as in pursuance of the general policy of law concerning corporate powers, that corporate transactions are restricted by law to the purposes which are defined in the corporate charter of articles of association.

Exceptions sustained, order to vacate judgment with further appropriate proceedings.

*Thompson & Clemons* for plaintiff.

*Thayer & Hemenway* for defendant.