## In re PROSPECT LEASING CO. ·

### Appeal of MEYER.

(Circuit Court of Appeals, Second Circuit.     March 21, 1918.)

No. 125.

1. CORPORATIONS ⬤═467—INDORSEMENT OF NOTES—VALIDITY.
    One stockholder of a corporation executed his notes to another stockholder, which were indorsed by the corporation. As consideration for the notes the payee transferred her stock to the maker, an action brought by her husband against the corporation to recover salary was dismissed, and the claim released, and his contract of employment was canceled. *Held*, that the indorsement by the corporation was not ultra vires as an accommodation indorsement, but was for a valid consideration.

2. CORPORATIONS ⬤═388(2)—CONTRACTS ULTRA VIRES—ESTOPPEL TO DENY VALIDITY.
    A corporation which receives and retains the benefit of a contract cannot deny its validity, although its act in making it was ultra vires.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the Prospect Leasing Company, bankrupt. From an order confirming an order of the referee expunging her claim, Mary Meyer appeals. Reversed.

This cause comes here on appeal from the United States District Court for the Southern District of New York. The facts appear in the opinion.

Ralph James M. Bullowa, of New York City (Lawrence E. Brown, of New York City, of counsel), for appellant.

Rosenberg & Ball, of New York City (David W. Kahn, of New York City, of counsel), for respondent.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge. This cause had its origin in the course of a proceeding in bankruptcy, and grows out of an order made by the District Judge denying a petition to review an order of the referee in bankruptcy which expunged the claim of the appellant in the sum of $5,500 and interest. It appears that Mary Meyer, the appellant, holds three promissory notes, made by one Kaufman to her order, all of which are dated September 29, 1914. Two of the notes are for $2,000 each, and the third is for $1,500. Each of the notes was indorsed: "Prospect Leasing Co., by Gustave Kaufman, President. H. A. Mark, Secy. Florence B. Kaufman." And the question presented is whether these notes constitute a claim against the Prospect Leasing Com-

pany, the bankrupt herein. The trustee objected to the allowance of the claim.

The referee in bankruptcy filed a memorandum sustaining the trustee's objections in which he states that:

"It appears these notes were given to the claimant on account of the purchase by Kaufman of her [Mrs. Meyer's] stock in the bankrupt, which had been engaged in the business of conducting the Hotel St. Andrew, in the city of New York."

He also says:

"It would appear that the transaction in which the notes were given was a personal one between the claimant and Kaufman, and that there was no consideration moving to the bankrupt corporation, and its act in making these indorsements was entirely without its corporate powers."

He thereupon entered an order disallowing and expunging the claim. When the matter came up in the District Court the referee's report was confirmed, the District Judge simply stating that he was satisfied that the conclusions of the referee were right.

[1] It is necessary to look at the facts which led up to the execution and indorsement of the notes which are the basis of the appellant's claim against the bankrupt. At the time the Prospect Leasing Company was organized the claimant, Mrs. Meyer, and her husband and the Kaufmans became stockholders therein. Mrs. Meyer took 24 shares of the stock, and her husband took one and became the secretary of the corporation. He and the Kaufmans managed the affairs of the corporation, and Meyer was co-manager of its hotel, the Hotel St. Andrew, in which capacity he was to be paid a salary of $100 a week.

The time came when the Prospect Leasing Company was unable to pay the rent for the hotel which it operated, and Kaufman was compelled from time to time to provide for its payment from his individual funds, even mortgaging his home for the purpose. When he had about used up his own means he and the Meyers had a meeting, and it was ascertained that the latter's share of the advances made by Kaufman amounted to $10,000. Thereupon the Meyers signed four notes of $2,500 each payable to Kaufman individually. At the same time they delivered their certificates of stock to him to be held as security for the payment of the notes, and the latter had the certificates of stock transferred into his own name on the books of the company. This was on June 18, 1914. It also appears that Meyer claimed that he had not received all his salary due under his contract above mentioned, and that he assigned his claim to one De Giorgio, and that the latter commenced an action in the courts against the Prospect Leasing Company to recover from it $1,975, alleged to be due with interest. The services of Meyer under this contract were alleged to have commenced on April 5, 1914, and it was averred that he had received for such services only $325 instead of $2,300 due under the contract.

In this condition of affairs an adjustment was made of the difficulties in which the corporation, the Kaufmans, and the Meyers found themselves. It was agreed that the suit against the corporation should be withdrawn; that the contract between Meyer and the corporation

should be canceled; that mutual releases should be exchanged; that the Kaufmans should give their notes to Mrs. Meyer in the sum of $10,500; that these notes should be indorsed by the corporation; and that such indorsement should be authorized by the stockholders and directors acting separately. And all this was done in accordance with the agreement. Two of the notes were paid when they became due. Those which remained unpaid were duly protested, and notice of protest was duly given. It is these notes which constitute the basis of the appellant's claim against the corporation, the bankrupt in this proceeding.

The only intelligent statement in the record as to the circumstances under which the notes were indorsed is to be found in the testimony given by the attorney for De Giorgio who brought action against the bankrupt for the recovery of the salary due Meyer, and which was discontinued because of the settlement made on September 29, 1914. He was asked to state the terms of the adjustment and his answer follows:

"Mr. De Giorgio was to discontinue his action against the Prospect Leasing Company under a general release to the Prospect Leasing Company upon the delivery of the certain promissory notes to Mrs. Mary Meyer, who was Mr. De Giorgio's mother-in-law, which notes were to be indorsed by Mr. Kaufman and the Prospect Leasing Company. There was a certain cash payment at the time."

There is nothing in the record which contradicts this testimony. Mr. Kaufman's testimony is not very specific on the subject, and, if it contradicted the testimony above referred to, could hardly be accepted as conclusive in view of his admission that he had met with an accident in July, 1912, and that since that time his memory had been somewhat uncertain.

It is argued that the indorsement by the corporation of these latter notes was for accommodation purposes, and therefore void as ultra vires. The rule is, of course, fundamental that a corporation has no implied power to make accommodation paper. To hold otherwise would be to allow the corporate funds to be devoted to other purposes than those indicated by the charter, thus violating the fundamental agreement between the shareholders. In Cook on Corporations (7th Ed.) vol. 3, § 774, it is said to be a well-established rule that a corporation cannot ordinarily be bound by its signature to or indorsement or guaranty of the note or paper of another person for the accommodation of the latter. The directors are authorized by the stockholders to do business for corporate purposes, but are not authorized to use the corporation to perform acts of friendship or accommodation to others. The general rule is that the accommodation indorsement, signature, or guaranty of the corporation is illegal and cannot be enforced.

In 10 Cyc. 1115, it is said that:

"Judicial authority is nearly unanimous to the effect that a corporation has no power to make, to indorse, to accept, or otherwise to become liable upon commercial paper for the mere accommodation of another person or corporation."

In 7 Am. & Eng. Encyc. of Law, 793, it is said that:

"By the overwhelming weight of authority, a corporation has no power to issue or indorse, for the accommodation of others, bills or notes in which it has no interest, unless, as is seldom, if ever, the case, such power is expressly conferred."

This was declared to be the law by the New York Court of Appeals in National Park Bank v. German-American Mutual Warehousing, etc., Co., 116 N. Y. 281, 22 N. E. 567, 5 L. R. A. 673. But in Martin v. Niagara Falls Paper Mfg. Co., 122 N. Y. 165, 25 N. E. 303, there is a dictum declaring that a manufacturing corporation can execute accommodation paper with the consent of its stockholders.

And in Cook on Corporations (7th Ed.) § 3, that author says that:

"A private corporation may become an accommodation indorser, distribute its assets, issue its notes, stock, or bonds below par, or, for no consideration whatever, may give away its assets, or may mortgage its property for the personal benefit of a part or all its stockholders or officers, provided always that all the stockholders assent, and provided that corporate credits are not injured, and provided that no statute forbids such acts. * * * Thus 50 years ago the courts would have summarily declared it illegal for a business corporation to become an accommodation indorser of commercial paper, but to-day there is no rule of public policy which prohibits a private corporation having a capital stock from becoming the accommodation indorser of commercial paper, providing such indorsement is made with the knowledge and assent of all the directors and stockholders, and provided corporate creditors are paid."

This is a phase of the subject which was not suggested at the argument and which we do not find it necessary to consider.

There is proof in the record that the consideration for the indorsement of the notes was the cancellation of the contract made between the corporation and Meyer under which it agreed to pay Meyer a salary of $100 a week as co-manager of its hotel, and also the discontinuance of the action for $1,975 which had been brought against the corporation for salary due from it to Meyer.

The corporation indorsed the notes in the adjustment of claims arising against it in carrying on the very business that it was organized to conduct, and it was released from liability on existing obligations upon guaranteeing the payment of notes given in payment of those obligations. Under the circumstances the indorsement of the notes cannot be regarded as ultra vires, and cannot be regarded as having been made for accommodation purposes. Under the Negotiable Instruments Law of New York an accommodation party is defined as:

"One who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name to some other person." Consol. Laws of the State of New York, c. 38, § 55.

The corporation received value and did not lend its name within the meaning of the Negotiable Instruments Law. Its name was indorsed on the notes in order to accomplish its own corporate and legitimate ends. If the corporation had executed the notes as a maker, there can be no question as to the sufficiency of the consideration and that it would have been bound to perform according to its agreement.

And it is not less bound because upon the same consideration it signed as indorser and not as maker. In Thompson v. Whitney & Marsh, 17 Haw. 107, 113, 114 (1905), the Supreme Court of Hawaii said:

"It is not essential that the benefit which the indorsing corporation receives from indorsing a note shall come directly from the drawee. It is enough if the benefit is received indirectly, provided always that the indorser's object in making the indorsement is a legitimate object in connection with its regular corporate business. Of course, the maker's object in securing the aid of an indorsement may be something in which the indorser is not legitimately concerned; but while the indorser's intent necessarily is to aid the maker of the note by lending him its credit, if it seeks to accomplish thereby legitimate objects of its own, and not simply to aid the maker, then the indorsement is not for accommodation."

[2] This is a correct statement of the law and decisive of the case. But if it were not the law, and the indorsement were for the sole accommodation of the maker, and on that account ultra vires, the corporation could not under the circumstances disclosed in the record deny its liability to this appellant. The corporation has had the full benefit of the contract the parties made, and the benefit it received it has ever since enjoyed. While it retains the benefits of the contract, it cannot deny its validity. See Lyon Potter & Co. v. First National Bank, 85 Fed. 120, 122, 29 C. C. A. 45 (1898), decided in the Circuit Court of Appeals in the Eighth Circuit, which was a case of an indorsement in blank by one corporation of a note made by another, the defense being that the indorsement was for the accommodation of the maker. And see Bank v. Allen, 90 Fed. 545, 33 C. C. A. 169.

In Bacon v. Montauk Brewing Co., 130 App. Div. 737, 743, 115 N. Y. Supp. 617, 620 (1909), the Montauk Brewing Company made certain promissory notes which were payable to the Eurich Brewery and indorsed by it, and, so indorsed, were delivered to the Duluth Brewing & Malting Company. It was claimed that the notes were made for the accommodation of the Eurich Brewery, and that no consideration passed to or was received by the Montauk Company. It was also claimed that the payee knew at the time the notes were made that they were not executed for the benefit of the Montauk Company. The referee found that there was no consideration for the execution of the notes and the Appellate Division reversed the case. Judge Laughlin, writing for the court, said:

"I am also of the opinion that the learned referee erred in finding that there was no consideration for the execution of these notes. As part of the same transaction the Duluth Company canceled the obligations of the Eurich Brewery, with which the Montauk Company had these intimate business relations, and thereby the Montauk Company was protected against any interference by the Duluth Company with the property of the Eurich Brewery on account of the nonpayment of the notes, and was to that extent protected in its right to obtain the beer of the Eurich Brewery, or rather would not be prevented from obtaining such beer by any litigation which might otherwise have been instituted by the Duluth Company.

"It follows, therefore, that the judgment should be reversed, and a new trial granted before another referee, with costs to appellant to abide the event."

The conclusions which we have reached are that there was a consideration for the corporation's indorsement of the notes, that such in-

dorsement was not an ultra vires act, and that the claim of the appellant is therefore valid and should not have been expunged.

Order reversed.