HENRY MARTIN as President, etc., Respondent, v. THE NIAGARA FALLS PAPER MANUFACTURING COMPANY et al., Appellants.

Under the provision of the General Manufacturing Act (§ 2, chap. 40, Laws of 1848, as amended by chap. 517, Laws of 1864, and chap. 481, Laws of 1871), authorizing a corporation organized under it to secure any debt "contracted by it in the business for which it was incorporated," by mortgage, provided "the written assent of stockholders, owning at least two-thirds of the capital stock of such corporation shall first be filed," where the requisite consent is given, although not filed before the execution of the mortgage, and no rights of other creditors intervene, this is a sufficient compliance with the statute to make the mortgage valid in this respect as against the company and its stockholders.

If the officers or trustees of a manufacturing corporation do an unauthorized act, or incur indebtedness, which would not create a corporate liability, the stockholders may subsequently ratify, and so, validate the transaction.

There is nothing *malum in se* or *malum prohibitum* in the loaning of its credit by such a corporation, and where accommodation paper has been executed in its name by its president, and the transactions have been ratified by the stockholders, and no other rights intervene, they are thus validated and may be enforced against the corporation.

W., the president of defendant, a corporation organized under the General Manufacturing Act (Chap. 41, Laws of 1848, as amended by chap. 517, Laws of 1864, and chap. 481, Laws of 1871), was also its general manager and financial agent; he owned more than two-thirds of the stock, managed all its business, and for many years there had been no meeting of stockholders for the election of officers. The giving of notes was a frequent occurrence in the management of its affairs and was justified by the nature of its business. The company kept no separate bank account, but its banking business was done through an account kept in the name of W., in which was deposited its moneys and those belonging to him individually, and from it, on the individual checks of W., was paid its indebtedness. Plaintiff, with whom such account was kept, discounted various notes signed by W., as defendant's president, the proceeds of which were deposited and credited in said account, and were drawn out on W.'s checks. One of defendant's by-laws required its secretary to sign all obligations of the company. This never had been enforced and was unknown to plaintiff. Subsequently to secure, among other things, all notes which had been given by the company, and any or all of its indebtedness by it to the bank, a mortgage upon its real estate was executed to the bank. In an action to foreclose the mort-

gage, *held*, that the giving of notes in the name of defendant for money borrowed was not only within the apparent scope of W.'s authority, but that the long period he had been permitted without interference to manage its affairs, justified the inference that it was within his actual authority, that the presumption was the notes were given in the company's business, and for its benefit, and the burden of proving the contrary rested upon the defendant; that the fact the notes were credited to the account of W., and drawn out on his checks did not, under the circumstances, change or affect the presumption; and so, the evidence justified a finding that the debt was contracted in the business of the company, and the mortgage was enforceable for its payment.

Said notes were renewed from time to time; subsequently, in pursuance of a written agreement between the company and the bank, new notes were discounted, and with the proceeds the old notes were paid and delivered up. The agreement recited the indebtedness of the company upon certain notes, a list of which was attached, and included those executed before the making of the mortgage, which amounted to more than the sum secured thereby. The agreement also recognized the authority of W., as president, to bind the company in all previous transactions between the parties, that he had express authority to make and execute promissory notes for it, that notes so made were to be held and conclusively deemed for the benefit of the company and that it was liable upon all such paper held by the bank. This agreement was executed by W., on behalf of the company, as president, pursuant to a resolution passed at a meeting of the trustees, voted for by him and his daughter, who were the only trustees and held all the stock of the company. *Held*, that assuming the original notes were made and discounted for the accommodation of W., yet his acts were ratified, and became binding upon the corporation; also that said agreement was supported by a valid consideration in the surrender of the original notes, which were indorsed by W., and other parties; that as the ratification was by an agreement made under authority of all the stockholders, the fact that there were at the time but two trustees, was immaterial.

Reported below, 44 Hun, 130.

(Argued June 19, 1890; decided October 7, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made April 19, 1887, which affirmed a judgment in favor of plaintiff entered upon the decision of the court on trial at Special Term.

This action was to foreclose a mortgage.

The Manufacturers and Traders' Bank was a banking association organized under the state laws, engaged in business at Buffalo, and the Niagara Falls Paper Manufacturing Company was organized under the General Act of 1848 relating to manufacturing corporations.

The mortgage in suit was dated November 18, 1882, and was given as security for the payment of all promissory notes or bills of exchange which had been or which should at any time thereafter be made, drawn, indorsed or accepted by the said manufacturing company, and which had been or should at any time thereafter be discounted by said bank, and for all overdrafts made by said company, and all balances of account and all sums of money which should at any time be due or owing by said manufacturing company to said bank, to the amount of $60,000.

Further facts appear in the opinion.

*George Wadsworth* for appellants. The mortgage is void, because the company had no power to make it. (2 R. S. [7th ed.] 1731, §§ 1, 2; *R. S. Bank* v. *Averell*, 96 N. Y. 471, 472; *Crocker* v. *Whitney*, 71 id. 166; 2 R. S. [7th ed.] 15, 31, § 1; *Vail* v. *Hamilton*, 85 N. Y. 453.) The mortgage is void because it was given to secure future advances, or as security for the payment of an uncertain, indefinite amount of indebtedness thereafter to be created, which had not been contracted when the mortgage was given, and was not contracted or created concurrently with it, and all the promissory notes described in the complaint, as security for the payment whereof the plaintiff claims to hold this mortgage, were made long after the mortgage was given, to-wit: December 18, 1883. This is in direct violation of the statute. (*Carpenter* v. *B. H. G. M. Co.*, 65 N. Y. 43; *Crocker* v. *Whitney*, 71 id. 161; *N. Y. S. L. & T. Co.* v. *Helmer*, 77 id. 64; *Lord* v. *Y. F. G. Co.*, 99 id. 547; *Steinbach* v. *L. F. F. I. Co.*, 54 id. 90; *G. S. Co.* v. *Whitier*, 69 id. 335; *McCullough* v. *Moss*, 5 Den. 567.) When the notes in suit were made the paper company could not lawfully make them,

or transact any business. (2 Morawetz on Corp. 648, § 681; 1 id. 486, § 519; 54 N. Y. 314, 329.) A contract *ultra vires* is void. (*Bissell* v. *M. S. & N. I. R. R. Co.*, 22 N. Y. 258; *Vincennes University* v. *Indiana*, 14 How. [U. S.] 268, 273; *Gould* v. *Clark*, 34 N. H. 148, 156; *D'Arcy* v. *T. K. H. & R. W. Co.*, L. R. [2 Ex. Div.] 158, 162; *Philips* v. *Wickham*, 1 Paige, 590; *R. S. Bank* v. *Averell*, 96 N. Y. 471; Bigelow on Estoppel, 286, 288, 466, 477; *People* v. *Twaddell*, 18 Hun, 427, 429; *Robertson* v. *Bullions*, 9 Barb. 64, 94; *Crocker* v. *Whitney*, 71 N. Y. 161; *N. T. & C. Co.* v. *Miller*, 33 N. J. Eq. 55; *Shrewsbury* v. *B. R. W. Co.*, 6 H. L. Cas. 26; *Kent* v. *Q. S. M. Co.*, 78 N. Y. 159, 186; *F. Co.* v. *L. S. Bk.*, 68 Me. 43; *De Vinne* v. *Rianhard*, 9 Daly, 406; *Kirkland* v. *Kille*, 99 N. Y. 390; *Vail* v. *Hamilton*, 85 id. 453; *Dabney* v. *Stevens*, 40 How. Pr. 341.) Ratification will not be inferred unless it is shown that the board of trustees had notice or knowledge of the unauthorized acts. (*McCullough* v. *Moss*, 5 Den. 577; *Adriance* v. *Roome*, 52 Barb. 399; *Risley* v. *I., B. & W. R. Co.*, 1 Hun, 205; *M. Bk.* v. *N. Y. & N. H. R. R. Co.*, 3 Kern. 631, 634; *Adams* v. *Mill*, 60 N. Y. 539.) The question whether these notes were accommodation paper, or whether they represented legitimate debts of the company, contracted by it in the business for which it was incorporated, was a material one, and the refusal to find a material fact on the ground that it is immaterial raises a question of law, and although such fact be not conclusively proved, and the evidence as to it is conflicting, the ruling is error. (*James* v. *Cowing*, 82 N. Y. 449, 458, 459; *Fox* v. *Mayor*, 54 id. 125, 128.)

*Sherman S. Rogers* for respondent. The notes in suit were the valid obligations of the Niagara Falls Paper Manufacturing Company. (*Kraft* v. *Freeman Pub. Co.*, 87 N. Y. 628; *Phillips* v. *Campbell*, 43 id. 271; *Martin* v. *Webb*, 110 U. S. 7.) So long as there is a quorum of trustees, *i. e.*, a majority, the power of the trustees as a board is not suspended. (1 R. S. [2d ed.] 600.) If the action of the board of directors did

not bind the company, the fact that those trustees were the sole stockholders of the company cures the defect. (Morawetz on Corp. §§ 45, 46, 48, 74–77.)  The contract of November 22, 1883, was carried into effect in good faith by the bank. The company is now estopped to allege the irregular or unauthorized act on its behalf by the president.  (*S. H. B. Co.* v. *E. H. B. M. Co.*, 90 N. Y. 607; *Woodruff* v. *E. R. R. Co.*, 93 id. 609; *Castle* v. *Lewis*, 13 Hun, 298; 78 N. Y. 131.) The plea of *ultra vires* should not, as a general rule, prevail, whether interposed for or against a corporation when it would not advance justice, but, on the contrary, would accomplish a legal wrong.  (*R. R. Co.* v. *Roach*, 97 N. Y. 378; *W. A. Co.* v. *Barlow*, 63 id. 63; *Kent* v. *Q. M. Co.*, 78 id. 159, 185; *A. S. Bank* v. *Savery*, 82 id. 291, 307; *S. Co.* v. *E. Co.*, 90 id. 607.)  The mortgage made by the paper company was valid.  (Laws of 1864, chap. 517, § 2; *Jones* v. *G. I. Co.*, 101 U. S. 626; *Lord* v. *Y. F. G. Co.*, 99 N. Y. 547.)

BROWN, J.  The Niagara Falls Paper Manufacturing Company was a corporation organized pursuant to the General Manufacturing Act of this state (Chap. 40, Laws of 1848), and its right to mortgage its real estate was limited by section 2 of that act, and the amendatory act of 1864 (Chap. 517), and of 1871 (Chap. 481).

The last-named act provided that "any corporation formed under the said act   *   *   *   may secure the payment of any debt heretofore contracted, or which may be contracted, by it in the business for which it was incorporated by mortgaging all or any part of the real or personal estate of such corporation.  And any mortgage so made shall be as valid, to all intents and purposes, as if executed by an individual owning such real or personal estate, providing that the written assent of the stockholders owning at least two-thirds of the capital stock of such corporation shall first be filed in the office of the clerk of the county where the mortgaged property is situated."

The mortgage in question bore date November 18, 1882, and was recorded on December 27, 1882.  On the first-named

date Lauren C. Woodruff, who was at that time the owner of more than two-thirds of the capital stock of said corporation, duly assented in writing to the execution of said mortgage, which assent, having been duly acknowledged, was filed in the office of the clerk of Niagara county, where the mortgaged property is situated.

The court found as a fact that the consent was filed before the execution of the mortgage, and there is an exception to this finding. The evidence as printed in the record is that it was filed November 20, 1885. I assume this must be an error, as it is a date subsequent to the entry of the judgment appealed from.

However this may be, the assent was given before the execution of the mortgage, and no rights of creditors intervening, there was a sufficient compliance with the statute to make the mortgage valid as against the company and its stockholders. (*Rochester Savings Bank* v. *Averell*, 96 N. Y. 467.)

The mortgage provides that it was given as a collateral and continuing security for the payment of all promissory notes or bills of exchange which had been, or thereafter should be, made, drawn, indorsed or accepted by said paper company and discounted by said bank, and all moneys which should at any time be due and owing by said company to said bank to the amount of $60,000.

Upon the trial the plaintiff produced and put in evidence six promissory notes, aggregating $60,000, all bearing date December 18, 1883, and all payable thirty days after date to the order of L. C. Woodruff, and purporting to be made by the Niagara Falls Paper Manufacturing Company, by Lauren C. Woodruff, president, and indorsed by the payees, and it was admitted that the signatures and indorsements upon the notes were in the handwriting of Woodruff.

The appellant claims that inasmuch as these notes were made after the mortgage was executed, that it cannot be resorted to as security for their payment, and the argument is that the statutes I have quoted deny to the corporations formed thereunder power to mortgage their property except

for debts existing at the time of the execution of the mortgage, or created simultaneously therewith.

The Special Term found as a fact that at the time of the execution and delivery of the mortgage the said manufacturing company was indebted to the bank upon divers promissory notes in an amount between sixty and seventy thousand dollars, and that such notes were renewed from time to time by other promissory notes of said company until the making and discounting of the notes put in evidence on the trial.

Under the statute I have quoted the company was empowered to mortgage its real estate to secure a debt contracted by it in the business for which it was incorporated, and if this finding has evidence to support it, it controls the decision of the case and renders it unnecessary to consider many of the interesting questions that have been argued by the learned counsel for the appellant.

The evidence is uncontradicted that prior to the date of the mortgage the bank had discounted numerous notes of the company, the proceeds of which had been placed to the credit of Woodruff, and was drawn out by his individual checks, and that the amount advanced upon such notes was between sixty thousand and seventy thousand dollars, and that they were renewed from time to time until December 18, 1883, when the notes put in evidence were discounted, and with the proceeds the old notes were paid and delivered to Woodruff.

The notes of December 18, 1883, were discounted pursuant to a written agreement between the company and the bank, dated November 22, 1883, which recited the fact of the company's indebtedness upon certain notes, of which a list was attached to the agreement, and the great majority of which bore date prior to the date of the mortgage. The aggregate amount of these notes was about eighty thousand dollars. It also recited the fact that the bank desired said notes to be paid, and the company desired some or all of them to be renewed. It recognized Woodruff's authority, as president, to bind the company in all transactions theretofore had between the parties, and that he had express authority to make and

execute for it promissory notes, drafts, bills of exchange, and that notes and drafts so made were to be held and conclusively deemed for the benefit of the company, and that it was liable upon all such paper held by the bank. This agreement was executed by Woodruff, as president, on behalf of the company pursuant to a resolution passed at a meeting of the trustees voted for by Woodruff and his daughter, Mrs. Winslow, who were the only trustees and held all of the stock of the corporation.

Upon this evidence there can be no question but that the company made itself liable for the debt to the bank, and assuming, for the purpose of disposing of this branch of the case, that the original notes had all been made and discounted by the bank for the accommodation of Woodruff, still it was entirely competent for the stockholders of the corporation, no rights of creditors intervening, and no fraud being claimed, to ratify the acts of Woodruff and bind the corporation for the payment of the debt.

The general rules of law relating to contracts and property rights apply to corporations as well as to individuals, and the principles of law of agency apply to both alike.

The stockholders are the equitable owners of the corporate property, and if the officers or trustees do an unauthorized act or incur indebtedness which would not create a corporate liability, the stockholders may subsequently ratify the acts and validate the originally unauthorized transaction. What they might originally have done, they may do afterwards, and their subsequent assent is equivalent to original authority. And many cases would arise when it would be for the interest of both corporation and stockholders that an unauthorized act of the trustees should be made valid, or when justice and equity would demand that an unauthorized debt should be paid.

There was nothing *malum in se* or *malum prohibitum* in the loaning of the credit of the company to Woodruff, and no other rights intervening, the accommodation notes, if they were such, represented transactions which the stockholders were competent to validate and ratify.

The agreement of November 22, 1883, was supported by a valid consideration in the surrender of the original notes which were all indorsed by Woodruff, or Woodruff & Co., and some by other parties. And this indebtedness having been ratified by an agreement made under the authority of all the stockholders, the fact that there were at that time but two trustees of the corporation became unimportant. The transaction having been ratified by all the owners of the corporate property, formal action by the board of trustees was unnecessary.

After the execution of that agreement, the company could not be heard to impeach the notes on the ground that they were without authority or contrary to authority. (Morawetz on Corp. §§ 618, 625; 2 Kent's Comm. 616; Story on Agency, §§ 239, 255, 256; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159.)

It is contended, however, by the appellant that although the corporation may be legally liable for the debt, still the notes in the first instance having been made and discounted for the accommodation of Woodruff, the debt was not contracted in the business for which the corporation was created and the mortgage cannot, therefore, be enforced for its payment.

The trial court refused to find as to each one of the original notes mentioned in the schedule attached to the agreement of November 22, 1883, that they were made without the authority of said company, and without consideration moving to it therefor, and solely for the benefit and accommodation of Woodruff; and also that the mortgage was not given to secure payment of any debt contracted by the company in the business for which it was incorporated.

The refusal to find these requests, we think, is warranted by the evidence. The burden of proving that the notes were not given in the business of the corporation, rested upon the defendant.

Mr. Martin, the president of the bank, testified that he had no knowledge of the proceeds being used for Woodruff's benefit, and the facts of the case do not bring it within the rule which puts upon a holder of a promissory note or other cor-

porate obligation the burden of proving by direct evidence that it was issued pursuant to a vote of the trustees, or for a corporate debt, or that the corporation received the consideration, in order to establish a corporate liability. The cases where this rule has been held are those of special agency.

The general rule, of course, is that the agent's authority in all cases must be shown to charge the principal with an act performed by the agent, but in many instances this fact may be established by presumptive evidence. And this is so where the corporation, whose obligation is in question, is engaged in a business, the nature of which and the duties in relation to which devolved upon its officers, require or justify the giving of negotiable instruments without being authorized thereto by a special vote to that effect. If the scope of the agent's authority be proven and it appears that acts like the one in question would, under ordinary circumstances, be within the authority, a presumption arises that the necessary circumstances did exist and that the act in question was authorized. (Morawetz on Corp. § 616; *Lincoln* v. *Iron Co.*, 103 U. S. 412; 116 N. Y. 193; *F. & M. Bk.* v. *B. & D. Bk.*, 16 id. 125; *N. R. Bk.* v. *Aymar*, 3 Hill, 262.)

It was said in *Farmers' Bank* v. *Butchers and Drovers' Bank*, that the sound rule is that "when a party dealing with an agent has ascertained that the act of the agent corresponds in every particular, in regard to which such party has or is presumed to have any knowledge, with the terms of the power, he may take the representations of the agent as to any extrinsic fact which rests particularly within the knowledge of the agent, and which cannot be ascertained by a comparison of the power with the act done."

The case is analagous to the giving of a firm note by one partner for his own benefit.

When such a note is given in a transaction unconnected with the partnership business and known to be so by the person taking it, the other partners are not bound without their consent, but *prima facie* the firm note binds all the partners, and the burden of proving a want of authority lies upon the

firm. (*Doty* v. *Bates*, 11 Johns. 544; *Gansevoort* v. *Williams*, 14 Wend. 133–138.)

The nature of the business of the paper company justified the giving of negotiable paper, and the making of such instruments was an incident to the business it carried on. It was a frequent occurrence in the management of its affairs. The by-laws which required the secretary to sign all obligations of the company had never had any force and were unknown to the bank.

What the bank did know was that Woodruff was president, general manager and financial agent of the company. He was such by the general acquiescence of the stockholders. He and his daughter, Mrs. Winslow, owned the stock of the company. For twenty-five years there had been no meeting of the stockholders for the election of officers and very few meetings of the trustees, and Woodruff had managed the business as if it was his own. He bought its supplies, sold its products and paid its debts.

No other person was shown to have had a voice in the management of its affairs. Under such circumstances the giving of a promissory note in the name of the company for money borrowed was not only within the apparent scope of Woodruff's authority, but the long period during which without interference he was permitted to manage the company's affairs, justified the inference that it was within his actual authority. (*Martin* v. *Webb*, 110 U. S. 7.)

The bank was, therefore, justified in relying upon the presumption that the notes, being made in the name of the company, were given in its business and for its benefit.

Without discussing the evidence in detail, it is sufficient to say that the defendant did not overcome the presumption arising upon the face of the notes. The utmost that Woodruff's testimony shows is that the proceeds of the notes when discounted, were placed to his individual credit upon the books of the bank, and that it was drawn from the bank upon his individual checks. But the company kept no bank account of its own. Its banking business was done through the account

kept in the name of Woodruff, and in that account was deposited indiscriminately the money received at the mill and money received by Woodruff from other sources, and from it were paid on Woodruff's individual checks substantially all the bills, debts and liabilities of the mill. The fact that the proceeds of the notes were credited to Woodruff's account, and were drawn out by him, therefore, proves nothing, except the manner of doing the mill's business.

A very careful reading of Woodruff's testimony fails to show that the proceeds of any of the company's notes discounted by the bank were used by him for his individual benefit, and there is no proof that any of them were discounted when the mill did not need the money.

The trial court found that the account was an omnibus account where the transactions of the mill and of Woodruff were promiscuously entered, and was kept in that way for the convenience of all the parties.

And such we think was the purpose. There were overdrafts upon that account for which the company's notes were given, but there was no proof that such overdrafts were not caused by the needs of the company.

We are of the opinion, therefore, that the presumption that the indebtedness arising upon the original notes was incurred in the business of the corporation was not overcome, and the fact of the existence of such indebtedness being established, the mortgage was within the terms of the statute, even if we give to it the limited construction which the learned counsel for the appellant claims it should receive.

Having reached this conclusion, it becomes unnecessary to consider any of the other questions argued upon the appeal.

The judgment should be affirmed, with costs.

All concur, except BRADLEY and HAIGHT, JJ., not sitting.

Judgment affirmed.