## CORINNE MILL, CANAL AND STOCK COMPANY *v.* TOPONCE.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 257.   Submitted March 6, 1894. — Decided March 19, 1894.

The jury having in this case practically affirmed the truth of the plaintiff's story, this court accepts the result.

When services in the management of a farm and household in Utah are per-.formed under a general retainer, without any express agreement as to the

time or measure of compensation or the term of the employment, and such services continue for a series of years, no payments being made, and there is a mutual, open and current account between the manager and the proprietors, into which the matter of compensation enters as one of the items, the cause of action must be deemed to have accrued at the date of the last item proved in the account on either side.

THE facts in this case were as follows: On June 9, 1888, the defendant in error as plaintiff commenced his action in the District Court of the county of Weber, in the Territory of Utah. His complaint consisted of five counts. The first, for moneys paid out for the defendant; the second, for feeding and caring for certain stock of the defendant; the third, for his services as general manager of the defendant; the fourth and fifth, respectively, a claim for work and labor, and one for board alleged to have been due from defendant to Lea Owsley, and by him assigned to plaintiff.

The defendant answered, denying all but the claim in the fourth count of the complaint, and pleading also certain counter-claims. The case went to trial before a jury, which returned both a special and a general verdict, and on such verdicts judgment was rendered, March 19, 1889, in favor of the plaintiff, for the sum of $11,339.56. Subsequently, on July 12, 1890, this judgment was affirmed by the Supreme Court of the Territory, and thereupon defendant sued out this writ of error.

*Mr. C. W. Bennett* and *Mr. John A. Marshall* for plaintiff in error.

*Mr. James N. Kimball* for defendant in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

There are but two questions presented, and they grow out of the claim set forth in the third count of plaintiff's complaint. That claim is for the sum of $14,750 for services as general manager of the defendant corporation from January 1, 1883, to December 1, 1887. During all this time the plaintiff

was a director and the vice-president. It is conceded that there was no express contract or authority for compensation, and it is insisted that all that he did in behalf of the company was within the proper scope of his duties as an officer, or, if not, was done upon the understanding that such services were to be gratuitously rendered.

In the assignment of errors there is no complaint of the instructions of the court as to the law governing in such cases, but the contention is that the court did not, when requested, peremptorily instruct the jury to disregard that claim, and also that the jury erred in finding, as they did, that there was due to the plaintiff the sum of $9538.40 for such services.

The court charged in substance that for services rendered in the discharge of his duties as vice-president and director he could not recover ; that before recovery could be had the jury must find that the services rendered "were clearly outside of his duties as vice-president and director, and that they were rendered under such circumstances as raises an implied promise to pay for the services on the part of the company."

With reference to this question of fact it may be premised that the plaintiff and John W. Kerr owned substantially all the stock of the plaintiff corporation in about equal proportions; the other stockholders, who were also directors, apparently holding just enough stock to enable them to qualify as directors.

The charter was comprehensive in its terms, but the business which was actually carried on by the corporation was that of a ranch, stock, and mill. It had part of the time a ranch of 80,000 acres of land near Corinne, Utah, which, however, before the time of the trial had been reduced by sales to some 60,000 acres. It also had some sheep in Wyoming. Now, the plaintiff testified in reference to the property in Utah as follows: " I had charge of the entire business — had charge of the land, sold and purchased the land, purchased horses and sold them, sold land, and done everything;" and on cross-examination, in reply to a question as to what his duties consisted in and what his labors were, he said: " Well, knocking around, tending to the business of the company. Chasing fel-

lows off the land, trying to guard the land, tending to the stock on the ranch, digging ditches, superintending putting up fences, all contracts, and so forth."

Lea Owsley, who was foreman at the ranch, testified that the plaintiff was "general manager of the business;" "made all contracts of everything that came on the ranch;" "collected the bills;" "bought the feed, hay, and grain," and "had general charge of everything — land, cattle, ranch, and everything."

Neither the charter nor the by-laws of the corporation cast any special duties on the vice-president or director. The vice-president was only required to act in the absence of the president, and no special duties of management were in terms cast upon the president. It was provided that he preside at all meetings, sign all certificates of stock, contracts, checks, etc., "and generally do and perform such other duties as are incidental to his office and not in conflict with these by-laws and the articles of association." No duty was cast on any individual director as such. The board of directors, as a body, were charged with the usual duty of care of the affairs of the corporation, but all the power and duty cast upon them was upon them as a board, and not individually. Obviously, therefore, under the testimony which we have referred to, from the plaintiff and the foreman of the ranch, the services which the plaintiff performed were not those of a director or vice-president, but outside thereof, and similar to those of a general manager.

It is unnecessary to refer to the testimony which tends to weaken the scope of these general statements of the plaintiff and the foreman, because such conflict presents but a mere question of fact, upon which the verdict of the jury is conclusive. It is enough to sustain the verdict that there was positive, direct testimony to the existence of the facts as found. Neither is it clear, as contended by the defendant, that this claim for compensation as general manager was an afterthought, and in retaliation for a claim made by Kerr, the president, for interest; for, while it is conceded by the plaintiff that there was a dispute between Kerr and himself as to

the matter of interest, yet his version of that is substantially this: When he commenced work as general manager nothing was said in respect to his compensation, but some time afterwards, when sheep were purchased by the corporation from Kerr, and the price agreed upon, a question was raised as to interest upon the deferred payments, and then, as he says, Kerr agreed to waive interest on condition that he waived any claim for compensation for his services as manager, and yet, notwithstanding this agreement, Kerr afterwards insisted upon and recovered interest from the corporation.

It is unnecessary to consider the contradictory testimony or to attempt to determine the actual facts in reference to this matter. It is enough that the jury by their verdict have practically affirmed the truth of plaintiff's story; and that shows an understanding on the part of the parties in interest that he was to receive compensation for his services as manager, and that the two parties who owned substantially all the stock and properties of the corporation attempted to make an arrangement in respect to such compensation, which arrangement proved a failure, and proving a failure left the corporation under the implied obligation to pay for the services. We concur with the Supreme Court of the Territory, when it says: "It was the peculiar province of the jury, under proper instructions from the court as to the law governing plaintiff's right to recover for the services claimed to have been rendered, to determine from the evidence whether or not he was entitled to compensation therefor. The jury found the issue in plaintiff's favor. Plaintiff claimed $250 per month from January 1, 1883, to December 1, 1887, amounting to $14,750. The jury allowed him $8850 and $688.40 interest, amounting to $9538.40. While the evidence to sustain this verdict is not entirely satisfactory, and while, if submitted to this court originally on the printed testimony, a different conclusion might possibly be reached, yet, the jury having found for the plaintiff on part of his claim, and the judge who heard the case in the court below having refused to set the verdict aside, we do not think it is so far unsupported by the evidence as to justify this court in doing so."

The other matter is this : This action was commenced, as stated, in 1888, and the claim for compensation as manager was for a term extending from January 1, 1883, to December 1, 1887, and the contention is that part of this claim was barred by the statute of limitations.   The statutory provisions applicable thereto are the following :

" Within two years.  1st.  An action upon a contract, obligation, or liability not founded upon an instrument of writing ; also on an open account for goods, wares, and merchandise, and for any article charged in a store account : *Provided*, That action in said cases may be commenced at any time within two years after the last charge is made, or the last payment is received." (Section 3145, Compiled Laws Utah, 1888.)

" In an action brought to recover a balance due upon a mutual, open and current account, where there have been reciprocal demands between parties, the cause of action shall be deemed to have accrued from the time of the last item proved in the account on either side."   (Section 3149, Compiled Laws Utah, 1888.)

Now, whatever might be the rule, if all that was involved in this case was a simple claim for compensation as manager, there was within the very terms of the statute a " mutual, open, and current account," between the parties, and into that account the matter of such compensation entered as one of the items, and so the court did not err in refusing this instruction asked by the defendant :  " When services in the management of a farm and household are performed under a general retainer, without any express agreement as to the time or measure of compensation or the term of the employment, and such services continue for a series of years, no payments being made, the law for the purpose of determining when the statute of limitations begins to run will not imply an agreement that the payment of compensation shall be postponed until the termination of the employment, but will regard the hiring as from year to year, and the wages as payable at the same time."

Not only was there an account presented by the plaintiff for $4882.23, for moneys paid out at the instance and request of the defendant, from January 1, 1883, to December 1, 1887,

and also one for the further sum of $1133.25, for feeding, caring for, and keeping its horses during the same time, but also in its answer the defendant presented by way of counter-claim, first, an account against plaintiff and Owsley, as partners, for the pasturage of certain cattle, varying in number from 56 to 299, from the year 1883 to June 10, 1888, at twenty-five cents per head a month, on which only $414.40 was admitted to have been paid; also a claim against plaintiff and said Owsley jointly for the sum of $325.75 for horses sold and delivered to them; and finally, as a last counter-claim, defendant alleged: "That prior to and at the commencement of this action the plaintiff was and still is indebted to defendant in the sum of $3614.51, a balance upon an account for money loaned, paid out and expended to and for plaintiff, and for goods and materials furnished to him, and for divers and sundry other items and matters of charge, all on open running current account and at plaintiff's request, between January 27, 1883, and June 10, 1888. That said sum of $3614.51 was, at the commencement of this suit, and is due from and unpaid by plaintiff to defendant, and no part thereof has been paid."

On the trial the defendant offered the account taken from its books, running from January 27, 1883, to June 10, 1888, an account consisting of hundreds of items, and filling twelve pages of the printed record. Obviously, there were between the parties open, mutual, and current accounts, and as one item in those accounts was this claim for compensation as manager, and this, whether that was to be payable monthly or annually, we see no error in the record, and the judgment is

*Affirmed.*

MR. JUSTICE WHITE, not having been a member of the court when this case was argued, took no part in its decision.