In re GOUVERNEUR PUB. CO.

(District Court, N. D. New York. February 26, 1909.)

No. 3,042.

1. CORPORATIONS (§ 308*)—OFFICERS—CONTRACTS FOR COMPENSATION.

A binding contract by a corporation to pay a salary to an officer or director for services not incidental to his office may be made without any formal resolution of the board of directors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1338; Dec. Dig. § 308.*]

2. CORPORATIONS (§ 309*)—OFFICERS—DEALINGS WITH CORPORATION.

The secretary and treasurer of a corporation who was also its active de facto manager with authority to buy property on credit, to collect and pay out money for the corporation, and to borrow money, from time to time advanced money of his own to pay bills, which he charged up as an indebtedness of the company on its books, and repaid to himself from money collected for the company later. This custom was known to the president and directors, and was not objected to. *Held*, that such advances were not voluntary, but were made under an implied agreement by the company to repay them, and that those unpaid when it became a bankrupt were provable against its estate.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1367; Dec. Dig. § 309.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
168 F.—8

In Equity. Review on appeal therefrom of the order of the referee allowing the claim of Martin I. Sackett at $8,300.52 on an open and unsettled account.

Malby & Lucey, for claimant.

Abbott & Dolan, for objecting creditor and stockholder.

RAY, District Judge. It is unnecessary to go into the facts in detail, as the questions to be decided rest upon three general propositions, and a general statement of the facts is all that is necessary.

The Gouverneur Publishing Company was organized in 1887, and engaged in printing and publishing a newspaper, at times more than one, and job printing. Martin I. Sackett, who had been a schoolteacher, and had accumulated a little money, and possessed some executive and considerable literary ability, and who was in accord politically with certain other gentlemen of his political faith who were desirous of controlling a newspaper in that place, was solicited to take stock and engage in the enterprise, which he did. His holdings of stock grew until he became the largest holder of stock, and he was elected secretary and treasurer, and, by common consent and acquiescence, became, and was for about 18 years, the active manager of the corporation, and also the editor of the paper published by it. At the first or about the first meeting of the directors it was proposed that Sackett should receive for his services the sum of $1,200 per annum, and Sackett assented, no one objecting. The evidence justifies the finding, and I find, that this compensation was not for the performance of his official duties, but for the performance of those outside of his official capacity, and done and to be done in managing the business and editing the paper, etc. By the common consent, approval, and acquiescence of the stockholders, directors, and other officers, and with the above understanding, Sackett assumed and entered upon the performance of all these duties, and did the work satisfactorily, so far as appears, for some 18 years, when, having been appointed United States consul to Prescott, Canada, he severed his connection with the company as manager. During all this time, except signing officially, he conducted the business substantially as if it were his own. He collected subscriptions and bills due, made purchases of machinery and supplies, and payments thereon and therefor, and employed and discharged and paid help and kept the books, etc., and formulated and executed the general policy of the company, all with the general consent and acquiescence of the stockholders and directors and other officers. He drew money from the concern from time to time as he required it for his own use and living expenses, and made such purchases as he saw fit in conducting the business, and whenever the company did not have money on hand for these purposes he advanced it from his own private funds, trusting to subsequent incomes from the business for reimbursement. Other directors were about and in and out of the office, and the books and business and its conduct were open to inquiry and inspection at all times. All that was done was known, or might have been known, except that at one time a rival or competing paper and its business and subscription list were pur-

chased, for the benefit of this company, however, and this, for policy sake, was kept secret for a time, but was subsequently made known and ratified and approved by the board of directors. There is no question that the company availed itself of and had the benefits of the transaction, such as they were. Eventually, probably, it resulted in no benefit, but temporarily it was an advantage. The books were loosely kept, evidently, but not dishonestly so, and Sackett did not charge up his salary except on one occasion. Receipts and also payments aggregating several thousands of dollars for the 18 years did not go on the books at all. The referee, with infinite labor, has gone over the whole time and compelled an exact accounting of all receipts and disbursements, including salary, and on balancing the account has found actually due to Sackett something like $14,335.74, but he has limited the claim allowed to that first presented, and that to the amount therein claimed, $8,300.52.

The referee gets at the figures in his summary in this way:

| | | |
|---|---:|---:|
| Total cash received in business | | $ 84,812 01 |
| Received for stock subscription | | 6,000 00 |
| Total book accounts not collected | | 7,437 60 |
| | | $ 98,249 61 |
| Paid expenses, etc | $90,072 16 | |
| Paid plant and other papers, etc | 12,987 61 | |
| Interest paid | 1,400 00 | |
| Drawn by Sackett as salary | 7,437 60 | |
| Balance due as salary | 687 98 | $112,585 35 |
| Due Sackett charging him with accounts unpaid | | $ 14,335 74 |
| The total cash receipts were | | $ 90,812 01 |
| Total cash payments, leaving out salary | | $101,459 77 |

Leaving out salary, except that paid entirely, and accounts not collected, and confining ourselves to cash received and disbursed, we find the company owing Sackett about $13,647.76. Other figures of the referee give different results; however, I think the figures above given include salary actually drawn. I am unable to ascertain where any injustice has been done the company or its creditors or stockholders.

It is clear that there was a fair understanding with the creditors in the very beginning that Sackett should have $1,200 per year for his services outside of his official duties as director and secretary and treasurer. A binding contract for compensation for such services to one who is at the time an officer or a director in the corporation may be made without any formal resolution. Whatever may have been said in prior cases, this is now the settled law of the state of New York and of the United States courts. Bagley v. Carthage, W. & S. H. R. Co., 165 N. Y. 179, 182, 58 N. E. 895; Corinne Mill Canal & Stock Company v. Toponce, 152 U. S. 405, 407, 409, 14 Sup. Ct. 632, 38 L. Ed. 493; Bogart v. N. Y. & L. I. R. Co., 118 App. Div. 50, 54, 102 N. Y. Supp. 1093; Jackson v. N. Y. C. R. R. Co., 2 Thomp. & C. 653, affirmed on opinion below, 58 N. Y. 623. See, also, Henry v. R. & B. R. Co., 27 Vt. 435, and Bartlett v. M. R. Co., 151 Mass. 433, 24 N. E. 780.

In Bagley v. C., W. & S. H. R. R. Co., supra, the plaintiff was a director in and the president of the defendant company, and claimed to recover for services performed for the company outside his official duties. There was no resolution of the board of directors employing the plaintiff or directing him to perform the services. The syllabus of the case is as follows.

"The president and director of a corporation who renders services thereto outside of his official duties, upon an employment of the directors upon a promise of compensation, is entitled to receive the value of such services and the expenses incurred during their rendition, although he is not entitled by the by-laws to any salary for his official services, and there is no express resolution of the board of directors containing an agreement to employ and to compensate him."

The court held, on pages 181, 182, of 165 N. Y., on page 896 of 58 N. E.:

"It is true that he was not entitled by the defendant's by-laws to any salary for his official services, and that there was no express resolution containing an agreement to employ and to compensate him. But those facts are by no means conclusive upon the question. The fact that no salary was attached to the office which he held merely rendered it all the more essential to establish that the services in question were beyond the range of his official duties and their character. The issue upon that head was settled by the verdict and its subsequent affirmance.

"Neither is it essential to the plaintiff's right of recovery that he should have been employed under a formal resolution of the board. It is sufficient if, from the nature of the employment, the importance of the subject-matter, and the action of the directors of the corporation, the inference is authorized of the employment as alleged. Jackson v. N. Y. C. Railroad Co., 2 Thomp. & C. 653, affirmed here upon the opinion below, 58 N. Y. 623. The principle of the right of recovery in such cases was recognized in the case cited. See, also, Outterson v. F. L. Paper Co., 66 Hun, 629, 20 N. Y. Supp. 980; McDowell v. N. Y. & S. B. R. R. Co., 12 N. Y. St. Rep. 877; Corinne Mill C. & S. Co. v. Toponce, 152 U. S. 405, 14 Sup. Ct. 632, 38 L. Ed. 493; Henry v. R. & B. Ry. Co., 27 Vt. 435.

"It is the general rule that a director, assuming office as such without any agreement as to compensation, is presumed to render his official services gratuitously; for he assumes thereby, in a sense, a trust relation towards the company, and it would be against sound policy to permit him to assert claims for services which were within the line of his duties. But, when he is employed to perform services for the benefit of the corporation which are not within that line, there is not the same reason for denying him the right to be compensated. So far from there being any objection to the employment by a board of directors of one of their number as their agent to do something in the interest and for the benefit of the corporation which, collectively, it would be impossible or inconvenient for them to do, it may often happen, from the nature of the business to be done or in the situation of affairs, that it is essentially preferable and advantageous to do so."

In Corinne Mill Canal & Stock Co. v. Toponce, supra, the plaintiff was a director in and the vice president of the company (defendant below). It was conceded that there was no express resolution or contract for the rendition of the services. The court said:

"It is conceded that there was no express contract or authority for compensation; and it is insisted that all that he did in behalf of the company was within the proper scope of his duties as an officer, or, if not, was done upon the understanding that such services were to be gratuitously rendered. * * *

"The court charged in substance that for services rendered in the discharge of his duties as vice president and director he could not recover; that before recovery could be had the jury must find that the services rendered 'were clear-

ly outside of his duties as vice president and director, and that they were rendered under such circumstances as raises an implied promise to pay for the services on the part of the company.' * * *

"Obviously, therefore, under the testimony which we have referred to, from the plaintiff and the foreman of the ranch, the services which the plaintiff performed were not those of a director or vice president, but outside thereof, and similar to those of a general manager. * * *

"It is enough that the jury by their verdict have practically affirmed the truth of plaintiff's story, and that shows an understanding on the part of the parties in interest that he was to receive compensation for his services as manager, and that the two parties who owned substantially all the stock and properties of the corporation attempted to make an arrangement in respect to such compensation, which arrangement proved a failure, and proving a failure, left the corporation under the implied obligation to pay for the services."

In Bogart v. N. Y. & L. I. R. R. Co., supra, the plaintiff was a director in and secretary of the defendant company at the time of his employment.

In the case at bar the evidence is ample to sustain the finding and conclusion of the referee that there was a contract of employment at $1,200 per year, implied from the conversation with the directors referred to and the subsequent conduct of the claimant and the other directors and officers. The importance of the matter, the nature of the work done, and the conduct of the officers and directors authorize the inference of the employment as alleged. Bagley v. C., W. & S. H. R. R. Co., supra. The facts that the claimant did not charge up his salary, that he did not draw the full amount, and that nothing further was ever said about it, were duly considered by the referee, and also the remark made by claimant when a witness that the question of salary was furthest from his mind. He was not then speaking of the contract made, to which he had explicitly testified, but explaining another matter.

It is contended that the payments made by Mr. Sackett on the debts and liabilities of the company, where he used or advanced his own money for the purpose of making such payments, were voluntary, and that such payments cannot be allowed. If they were voluntary, within the meaning of the law. Sackett cannot sustain his claim, so far as they are concerned, as the law does not permit a man to volunteer and pay the debt of another, which he is not obligated to pay, without request, express or implied, and thus make him his debtor and recover from him. National Bank, etc., v. Board of Supervisors, 106 N. Y. 488, 494, 13 N. E. 439; Flynn v. Hurd, 118 N. Y. 19, 26, 22 N. E. 1109; City of Albany v. McNamara, 117 N. Y. 168, 22 N. E. 931, 6 L. R. A. 212.

But were these payments "voluntary" payments? I think not. There was a request to make the payments fairly implied from the circumstances under which they were made and the relations of Sackett to the company. In City of Albany v. McNamara, 117 N. Y. 172, 22 N. E. 932, 6 L. R. A. 212, the court held that:

"To maintain an action to recover moneys paid out and expended, it is essential to prove a request to make the payment on the part of the person benefited. either expressed or fairly to be implied from the circumstances."

Here there was no express request by the board of directors to make the payments with his own money—to advance it. But he was the

secretary and treasurer of the company, and also its active de facto manager. He was authorized to collect all moneys and pay all the debts of the company he could with its money. He was authorized to purchase property on the credit of the company and pay therefor, and for 18 years he purchased on credit, ran the company in debt, and paid such indebtedness with the money of the company or his own money as the case might be, and, when he used his own money for such a purpose, he reimbursed himself, when he could, from the funds of the company. All this was acquiesced in, and seems to have been expected of him. If he had borrowed money to make such payments on the credit of the company, it would have been bound by his act. The company had actual knowledge that Mr. Sackett was advancing his own money to pay the indebtedness of the company, and as to some of these advancements embodied the fact in a resolution formally assuming a note made for the benefit of the company. The advances were charged up to the company as indebtedness on its books open to all the officers and directors, and frequently seen and examined by the president of the company. When Sackett drew money it was credited on the same account in the same books. No objection was made. I think that with full knowledge these acts were ratified and approved by acquiescence, and that a request to continue them was implied. Sackett was acting within the general scope of his authority. He was the secretary and treasurer of the company, and was expected to provide funds, and, when borrowed for the benefit of the company, to repay them from the funds of the corporation. In effect, he, as treasurer, for the benefit of the company, borrowed from himself, individually, with the knowledge and approval of the president of the company and its directors. There was no express promise to repay, but it was implied. And, again, Sackett was a stockholder with others, and was in a sense compelled to pay in order to protect his own interests and the interests intrusted to him, and which he was obligated to protect by paying, when demanded, the debts of the company. Sackett advanced and paid the money for a reasonable cause and not officiously, and can recover of the company. 2 Greenleaf's Evidence, § 114; Irvine v. Angus, 93 Fed. 629, 633, 35 C. C. A. 501, reversing (C. C.) 84 Fed. 127; 27 Cyc. 833, 834.

In 2 Greenleaf's Evidence, § 114, it is said:

"Where no express order or request has been given, it will ordinarily be sufficient for the plaintiff to show that he has paid money for the defendant for a reasonable cause, and not officiously."

In Keener, Quasi Contracts, 388, it is said:

"If, however, the payment made, though made without request, is not regarded in law as having been officiously made, the party so paying is entitled to be reimbursed by the debtor to the extent that the debt, as between the debtor and himself, should, in equity and good conscience, have been paid by the debtor."

This is quoted and approved in Irvine v. Angus, supra. Clearly, Sackett, in making the payments, was not acting officiously, but, as stated, in the general line of his duty and for the protection of the interests intrusted to him and which he had undertaken to conserve.

In 27 Cyc. 833, 834, citing many cases, it is said:

"(a) In General. An action for money paid is maintainable in every case in which there has been a payment of money by plaintiff to a third party, at the request of defendant, express or implied, with an undertaking, express or implied, to repay the amount, and it is immaterial whether defendant is relieved from a liability by the payment or not. The request to pay and the payment according to it constitute the debt; and whether the request be direct, as where the party is expressly desired by defendant to pay, or indirect, where he is placed by him under a liability to pay, and does pay, makes no difference.

"(b) Payment for Self-Protection: (1) In General. Although no assumpsit will be raised by the mere voluntary payment of the debt of another person, yet if one person, in order to protect his own interests, pays a debt for which another is legally and personally liable, the law will imply an assumpsit on the part of the latter to the former. A request will be implied where the consideration consists in plaintiff's having been compelled to do that to which defendant was legally compellable."

So where one person has paid the debt of another without request, express or implied, so that there is no obligation to repay, that other may subsequently ratify the payment, expressly or impliedly, and thereby become obligated to repay. 27 Cyc. 837, 838, and cases there cited.

In Oliphant v. Patterson, 56 Pa. 368, it was held that a subsequent recognition of the payment is equivalent to an express request. In 27 Cyc. 837, 838, the rule is thus stated:

"An action for money paid does not lie except upon a previous request or a subsequent ratification on the part of defendant or his authorized agent. But where money or its equivalent has been paid for the use of another, the request or ratification may be either expressed or implied; and the request, as well as the promise, will be implied where the consideration consists in plaintiff's having been compelled to do that to which defendant was legally compellable, or where defendant has adopted and enjoyed the benefit of the payment. A request to one person to pay a sum of money will not authorize another, who advances the money, to recover it in an action for money paid brought in the name of the person to whom the request was made.

"(h) Voluntary Payment: (1) In General. A voluntary payment for the benefit of another gives the payer no right of action against the one for whose benefit the payment was made, unless he subsequently ratifies it."

I am satisfied under the evidence here that there was not only an implied request, but a subsequent ratification and approval, and an implied promise to repay.

As to the purchase of the Herald Times and the assumption of the indebtedness growing out of it, it is sufficient to say that there was no fraud or concealment, and the approval and assumption were by express resolution of the board of directors. Sackett had no private interests in any of these matters. In all that he did he was acting as the agent or representative of the stockholders, of which he was one. It was all done in their interest and for the benefit of the company, and not for personal gain or to serve some private interest or purpose. He was not trustee for the others, and they beneficiaries of the trust, where the trustee is forbidden to deal with the trust property, purchase it for his own benefit, or sell his own property to himself as trustee. But even in such cases the beneficiary may ratify and confirm on becoming competent so to do, as in cases of mental incompetency, infancy, etc. I think this case within Martin as Sheriff et al. v. Webb

et al., Trustees, 110 U. S. 7, 3 Sup. Ct. 428, 28 L. Ed. 49, and Martin v. Niagara Falls P. M. Co. et al., 122 N. Y. 175, 25 N. E. 303. For years Sackett was permitted to carry on and conduct the business in the way he did without objection, and generally with the knowledge of the president, and when transactions were brought to the attention of the directors they were approved. I think the long period during which business was done in this way justifies the inference that Sackett was acting within his actual authority as was held in the cases cited. See Martin v. Niagara Falls, etc., 122 N. Y. 175, 25 N. E. 303.

Holding these views, after an examination of all the authorities cited by the contestants, and on a careful review of the voluminous exhibits and the evidence, I am of the opinion that the decision of the referee allowing the claim was right, and his order is approved and affirmed, and the claim allowed. There will be an order accordingly.