**DRUMMOND v. DOBSON et al.**

District Court, W. D. South Carolina. September 1, 1926.

1. Interest ⟲18(1)—Proof of account must show definite amount due and payable for more than 30 days, to invoke statute requiring corporation to pay interest (Civ. Code S. C. 1922, § 4273).

Interest will not be allowed on claim of account against a corporation, under Civ. Code S. C. 1922, § 4273, where proof fails to show any definite amount "due and payable" for more than 30 days.

2. Bankruptcy ⟲154—President of bankrupt corporation held not entitled to allowance of salary under by-laws.

President of bankrupt corporation *held* not entitled to allowance of salary in accounting with trustee, where the by-laws did not provide for a salary, and no salary was ever paid him, or claimed by him until after bankruptcy.

3. Bankruptcy ⟲172—Transfers by bankrupt corporation to creditor director more than 4 months before bankruptcy held not recoverable.

Transfers by bankrupt corporation to a creditor more than four months prior to bank-

ruptcy *held* not avoidable by trustee solely because the creditor was also a director.

**4. Bankruptcy ⬤≈303(3)—Officers of bankrupt corporation held not jointly liable for their several indebtedness to the corporation.**

Concert of action between officers of a corporation in making preferential payments to one of them, who was a creditor, which payments were not at the time unlawful, but became so because of bankruptcy of the corporation within four months, *held* not to establish a conspiracy, which rendered them jointly liable for their several indebtedness to the corporation.

**5. Bankruptcy ⬤≈305—Trustee of bankrupt corporation may be allowed interest on recovery for misappropriation of officer.**

Interest *held* allowable on amount recovered by trustee in bankruptcy of corporation for money and property illegally appropriated by officers.

In Equity. Suit by C. M. Drummond, trustee in bankruptcy of Dobson & Montgomery, Inc., against R. D. Dobson and others. On exceptions to report of special master. Modified and confirmed.

Carlisle & Carlisle and J. Hertz Brown, all of Spartanburg, S. C., for complainant.

J. D. Lanford and Haynsworth & Haynsworth, all of Greenville, S. C., for respondent Dobson.

Evans & Galbraith, of Spartanburg, S. C., for respondent Montgomery.

WATKINS, District Judge. Plaintiff brings this bill against defendants as officers and directors of a bankrupt corporation, and seeks an accounting and recovery: (1) For voidable preferences made within four months of adjudication; (2) for voidable preferences made prior to the four months period, on the theory that defendants abused their fiduciary relation toward the corporation and its creditors; (3) For balances due on book accounts; (4) For certain items of corporate assets alleged to have been wrongfully converted by the defendants; and (5) for joint recovery against the defendants on all these scores, on the theory that defendants conspired to despoil the corporation.

On a consideration of preliminary motions by an opinion and order filed July 12, 1924, I have held that this court has jurisdiction of the cause of action stated by the bill. The defendant Montgomery filed no answer and has offered no defense. The case was referred to a special master, who has taken testimony and has filed the same with his report. To this report plaintiff has filed 9 exceptions, and the defendant Dobson 13 exceptions, which have been argued before me. As these exceptions put the entire case in issue, a statement of the facts is proper.

On October 19, 1921, a charter was issued to Dobson & Montgomery, Inc., with an authorized capital of $10,000; R. D. Dobson being president and T. E. Montgomery secretary and treasurer. These two were also the sole directors. Dobson was already engaged in the lumber business at Greer, S. C., and the corporation was to do a similar business at Spartanburg, S. C. The corporate organization was somewhat irregular, and no initial capital fund was created; but from time to time Dobson advanced cash and shipped lumber from his yards at Greer. In August, 1922, his account against the corporation amounted to around $11,000, and $8,100, or 81 shares, of its capital stock were issued to him. No other stock was ever issued, although it was agreed that Montgomery was to have 1 or 2 shares for his services in helping to organize the corporation, and later a share was voted to C. B. Pitts, a subsequent secretary.

The lease to the Spartanburg lumber yard was taken in the name of the individuals, and so remained thereafter; the corporation paying the rent called for by the lease. Lumber sheds were built at the expense of the corporation, and it has never received payment for the materials used. On December 28, 1922, a "condition statement" of the corporate business was prepared, which showed a surplus of $1,712.13. A note was appended to this statement to the effect that it did not include a balance still due on a Ford truck, and that it made no allowance for depreciation. Needless to say, if these debits had been entered, the "surplus" would have dwindled accordingly. Depreciation in sheds and receivables would have extinguished it.

On January 23, 1923, Dobson withdrew as president and director and turned over his entire stockholdings to Montgomery. The latter, admittedly a man of no financial responsibility, paid no cash, but executed his note to Dobson in the sum of $8,100, without indorsement, upon which the stock was deposited as collateral. C. B. Pitts, the brother-in-law of Montgomery, was at this time elected director, vice president, and secretary, and was instructed to issue to himself one share of stock. Montgomery became president and treasurer. Up to the time of this transaction, Dobson had visited the

Spartanburg yards several times a week, kept certain books of the corporation and its bank account at Greer, and, in his own words, "was actively engaged in that business." On the date of this transaction, the corporation was heavily indebted to Dobson.

Contemporaneously with or immediately after this transaction, the corporation began to ship lumber to Dobson in reduction of his account against it. The method followed was peculiar. The corporation would order in carload lots from the dealers, who would ship to the corporation at Spartanburg and invoice the lumber to it, subject to credit for freight. Without consulting the dealers, the corporation would then cause these cars to be reconsigned to Dobson at Greer, who would credit the corporation's account for the amount of the shipper's invoice, less freight from point of origin to Greer. The credit thus given was therefore less than the cost of the lumber to the corporation by the amount of reconsignment charges and freight from Spartanburg to Greer.

Four cars of lumber were so handled between January 23 and the end of the month, yielding the corporation a net credit of $2,969.06 on Dobson's books, after deducting freight. In February, 8 more cars were similarly handled, yielding a net credit of $6,666.57, or a total net credit of $9,635.63 up to March 1, 1923. March yielded a net credit of $6,132.68 from 7 cars of reconsigned lumber, a total to April 1 of $15,768.31. All shipments after February were made within four months of adjudication, and by April 1 Dobson's account had been slightly overpaid.

This reconsigning of lumber continued, however, until some time in May, when a total of 23 cars of reconsigned lumber and one car made up in Spartanburg had been so handled, totaling in value $22,270.23, which, after deducting freight, yielded the corporation a net credit of $18,779.27 on Dobson's books. An audit made after bankruptcy showed that the corporation's total purchases for this period amounted to $64,594.05, so that Dobson received approximately one-third of the lumber handled by the corporation during this period.

While this reconsigning of lumber was taking place, the affairs of the corporation were so managed that Montgomery also secured certain benefits to himself. It will appear from the auditors' account against him that he overdrew his salary account, discounted a note belonging to the corporation and used the proceeds of $500, used the proceeds of a $1,000 check belonging to the corporation, used its lumber to build a house belonging to him, and paid the contractor in part by crediting the contractor's account with the corporation with the sum of $1,025. On July 16, 1923, the corporation was adjudicated a bankrupt, plaintiff was elected trustee, and the creditors directed an audit of bankrupt's records. Later they directed the bringing of this suit, and the trustee was empowered to sue by an order filed February 4, 1924. Suit was commenced March 8, 1924.

Dobson's exceptions I, II, III, and IV contend that the special master erred in finding that Dobson had reasonable cause to believe that the corporation was insolvent and that the transfers to him would effect a preference.

The special master made a careful and satisfactory presentation of this issue, and no reason is apparent for reversing him. Dobson's explanation of his withdrawal from the business and the transactions which followed does not satisfy. The conclusion is irresistible that Dobson was actuated in this affair by a conviction that, because of the condition of the business, his individual interests would be best served by his immediate withdrawal and a speedy payment of the corporation's indebtedness to him, without regard for other creditors. The unusual method adopted to accomplish this indicated that he lacked faith in its accomplishment by normal and ordinary methods; that he was unwilling to take his chances along with other creditors. His explanation that the corporation was "overstocked, overbought," and "sorely disappointed in its business expectations," is an admission that he knew of the corporation's unsound condition. Being himself "active in that business," and having its books kept under his supervision, only his negligence in shutting his eyes against what stood plainly before him could account for a lack of knowledge. The circumstances are too persuasive to admit of reversing the special master. Recovery must be allowed for transfers made within the four months period.

Plaintiff concedes that Dobson's exception V must be sustained, and this requires a reduction of the amount of these transfers, as found by the special master, by the amount of the freight allowances, i. e., $1,088.23. The recovery against him for transfers within the four months period should be $5,676.52.

Exception VI must be governed by what has been said with reference to the first five exceptions.

The items mentioned in exceptions VII, VIII, and IX appear on the books both of the corporation and of Dobson; so that Dobson has received credit for these items, as the auditors used these records as a basis for their statement of the account against him. Consequently these exceptions must be overruled.

[1] Exception X must be overruled. It has not been made to appear that Dobson's account against the corporation ever became an account stated. The statute relied on by Dobson's attorneys (section 4273, 3 Code S. C. 1922) cannot avail him, as the proof fails to establish any definite amount in his favor "due and payable" for more than 30 days. See 22 Cyc. 1510; Water Company v. Camperdown Mills, 98 S. C. 304, 82 S. E. 417; Wakefield v. Spoon, 100 S. C. 100, 84 S. E. 418.

[2] Exception XI must also be overruled. Dobson's salary claim was not set up until after bankruptcy. It was not included on the condition statement of December, 1922. It was not scheduled in the petition in bankruptcy. His books running over a period of 21 months, and so offered by him in evidence in the bankruptcy reference, reveal no entry on account of salary due him. Prior to Dobson's withdrawal on January 23, 1923, the corporation had no by-law authorizing a salary to its president, and by its constitution, adopted on that day, the directors were authorized "to fix the salaries of the officers elected by them." The directors met immediately thereafter, but voted no salary to Dobson, although they voted one share of stock to C. B. Pitts (who took Dobson's place on the board) "in recognition of his faithful services." 10 Cyc. 921; Fitzgerald v. Fitzgerald, 137 U. S. 98, 11 S. Ct. 36, 34 L. Ed. 608; Corrine Mill v. Toponce, 152 U. S. 405, 14 S. Ct. 632, 38 L. Ed. 493; Pew v. Bank, 130 Mass. 391; notes L. R. A. 1915D, 632; L. R. A. 1917F, 311.

Exceptions XII and XIII must be overruled. Dobson has failed to rebut the showing made by the auditors in their statement against him contained in their Schedule 2, except as to the item of one car of lumber in the sum of $904.87, for which he has paid the shipper direct. Plaintiff concedes this item, and it is not included in the amount found against Dobson by the special master. The special master has also given him credit for two payments to the trustee totaling $2,667.20. The balance remaining on Schedule 2 is $1,592.48, and the special master was correct in so finding.

The recovery against Dobson should be, therefore, $5,676.52 on voidable preferences and $1,592.48 on book account, a total of $7,269.

[3] Plaintiff's exceptions I to VI contend that the special master erred in not testing the transfers prior to the four months period by the general law governing transactions between trustee and beneficiary. Plaintiff seeks to avoid these transfers under section 70e of the Bankruptcy Act (Comp. St. § 9654), on the ground that they could have been avoided by a creditor had not bankruptcy ensued. I am of the opinion that the special master was correct in not permitting such recovery.

It is not clear under what theory these transfers could have been avoided by a creditor. A corporate director owes to the corporation the duty to supervise its affairs and to exercise reasonable care to protect its assets; but there is no privity of contract between the directors of a corporation and its creditors. It appears here that Dobson, the director creditor of a failing corporation, secured a preference before the four months period, but no breach of his duty to the corporation is thereby shown. Nor does he owe any duty to other creditors that such preference could have infringed upon. It follows that, as the right to object was not available to a creditor, it is not now available to the trustee, and that recovery by the trustee cannot go beyond the four months preceding the adjudication.

Plaintiff's exceptions VI and VII call for consideration of certain alleged acts of conversion of corporate assets, including the investment of corporate lumber in sheds on property leased in the name of the individuals. It is clear that the individuals have secured to themselves no benefit from this investment. The sheds were necessary for the conduct of the corporate business, and, if the individuals had paid for their erection, they would have been justified in charging the corporation a rental commensurate with the cost of the improvements. The corporation paid the rental called for by the lease, which was for the land alone. Had the corporate business been successful, the use and convenience of the sheds would doubtless have offset their cost. Subsequent events demonstrated that the investment was unfortunate for the corporation; but it needs more than that to warrant a holding that it was made in such bad faith as to render

the defendants responsible in their fiduciary capacity.

However, the defendant Montgomery not having appeared, and the auditors having traced into his hands certain corporate assets for which he has not accounted, it follows that plaintiff is entitled to recover therefor. I am not convinced, however, that the recovery should go beyond the amount found by the special master; that is, the sum of $3,257.39. That was the amount charged against him by the auditors.

[4] Exception VIII seeks to hold the defendants jointly liable for the entire recovery. Mr. Chief Justice Taft said, in Truax v. Corrigan, 257 U. S. 327, 42 S. Ct. 127 (66 L. Ed. 254, 27 A. L. R. 375), that "concert of action is a conspiracy, if its object is unlawful or if the means used are unlawful." That there are here and there throughout the case indications of concerted action may not be questioned. But this concert of action is limited to the use of corporate assets for the erection of the sheds, which has been held not improper, and the preferring of Dobson by reconsignment of lumber. In the latter instance the preference did not become unlawful until the adjudication had established certain items thereof as within the four months period. Thus the concerted action was to accomplish a purpose not at the time unlawful, but which became so because of a subsequent event. Where unlawful acts have been proven, such as conversion of corporate assets by Montgomery, the proof is singularly clear of any implication of Dobson therein. The record does not disclose tangible proof of an unlawful object, or use of unlawful means, and therefore conspiracy has not been established.

[5] Plaintiff's exception IX must be sustained. The suit is in the main for the recovery of property or its value and for money had and received. In such cases interest is allowable under the South Carolina decisions. Sizer v. Dopson, 89 S. C. 535, 72 S. E. 464; Southern Railway Co. v. City of Greenville, 49 S. C. 449, 27 S. E. 652. Where no earlier demand has been proven, interest is recoverable from the date of commencement of the suit, or in this case from March 8, 1924. Kaufman v. Tredway, 195 U. S. 271, 25 S. Ct. 33, 49 L. Ed. 190, 12 Am. Bankr. Rep. 682; Davis v. Richardson, 1 Bay (S. C.) 105. Interest cannot, however, be allowed on the book account item of $1,592.48 found against Dobson.

Except as herein modified or reversed, the report of the special master should be confirmed.